**Bobby Blake NEWTON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–06–00160–CR.**

Court of Appeals of Texas,
Waco.

May 9, 2007.

Brian W. Wice, for Bobby Blake Newton.

Bill R. Turner and Douglas Howell III, for The State of Texas.

## DISSENTING OPINION

TOM GRAY, Chief Justice.

It is impossible for me to convey the level to which I am disappointed by my colleagues by the issuance of the order to change the publication designation of *Newton v. Texas. Newton v. State,* No. 10–06–00160–CR, 2007 Tex.App. LEXIS 2477, 2007 WL 926184 (Tex.App.-Waco Mar. 28, 2007, no pet. h.) (mem.op.). Their action shows that they have no regard for the rules of appellate procedure, and, therefore, no respect for the rule of law. Why they would do this on such a seemingly insignificant issue escapes my ability to comprehend human behavior. My vote on

whether to grant or deny Newton's motion to publish on its merits is immaterial, as is the majority's, because we have no authority to grant the relief requested.

Let me see if I can explain. On March 28, 2007, we issued an opinion for which the members of this Court had voted unanimously to issue as a memorandum opinion with the notation "do not publish." *See* Tex.R.App. P. 47.2(b). On April 10, 2007, Newton filed a motion to publish the memorandum opinion. *See id.* I cannot account for the movement of the motion within the Court from April 10, 2007, until April 19, 2007, when I, as the authoring justice of the Court's opinion, placed it in circulation with a recommendation as to how the Court should rule on it. Due to personal family matters, I was only available for two work days during this period. My staff, however, was available and reviewed the motion, and saw no urgency in disposing of the motion, because they knew that I would be back to the Court to process the motion before it was ripe for disposition. Under the internal operating procedures discussed more fully below, this Court normally rules on motions that are ripe for disposition on Tuesday of each week. As described above, there was nothing to indicate that this motion was anything special. Under the rules and our procedures, the earliest we would have normally ruled on Newton's motion was Tuesday, April 24, 2007.

On Monday, April 23, 2007, Newton filed and the Texas Court of Criminal Appeals granted a motion for extension of time to file his petition for discretionary review. *See Newton v. State,* No. PD–0536–07 (Tex.Crim.App.), http://www.cca.courts. state.tx.us/opinions/Case.asp?FilingID= 251279 (last visited May 9, 2007). Upon seeking and obtaining relief from the Court of Criminal Appeals before we ruled on the motion pending in this Court, New-

ton removed our authority to grant the relief he had requested. The applicable rule of appellate procedure is very clear and provides:

> each opinion in a criminal case must bear the notation "publish" or "do not publish" as determined—before the opinion is handed down—by a majority of the justices who participate in considering the case. Any party may move the appellate court to change the notation, but the court of appeals **must not change** the notation after the Court of Criminal Appeals has acted on any party's petition for discretionary review *or other request for relief.* The Court of Criminal Appeals may, at any time, order that a "do not publish" notation be changed [to] "publish."

Tex.R.App. P. 47.2(b) (emphasis added).

Newton had suggested no urgency or date by which we needed to rule. *See* Tex.R.App. P. 10.3(a)(3). Further, Newton might have obtained an expedited ruling on the motion, if he had complied with the rules of appellate procedure, by including a notation regarding a conference with opposing counsel or otherwise noting that no party opposed the motion. *See id.* (2). He did not. Therefore, because we "should not hear or determine a motion until 10 days after the motion is filed" with some exceptions, *see id.* 10.3(a), the absolute earliest that we could have ruled on the motion would have been on April 23, 2007. That was the first business day after the expiration of ten days after the motion was filed. But because the motion, which was placed in circulation on April 19, 2007, was not returned to me by Justice Vance, after casting his vote on the motion, until April 24, 2007, the day after the Court of Criminal Appeals had issued its order as described above, we could not have issued the ruling on the motion be-

fore the Court of Criminal Appeals issued its order.

Besides the requirements of the rules of appellate procedure, under internal rules adopted by a majority of the Court—the same two justices who are now ignoring those rules—because the motion was not returned to me until April 24, 2007, the earliest date upon which we could have issued the ruling was also on April 24, 2007. This assumes that I received the votes on the motion back before 10:00 A.M. on April 24, 2007, which I have no way to determine at this time. April 24, 2007, was, however, as noted above, the day after Newton had sought and obtained relief from the Court of Criminal Appeals.

There is an absolute dearth of support for Justice Reyna's contention that "a majority of this Court voted to grant [the] motion on April 23, 2007—before [the] CCA acted." And how can it possibly be that the timing of the casting of the votes would control over the date of the issuance of the order? Even if that were the law, which it is not, would we not have to compare the time that the last member of this court voted to the time that the Court of Criminal Appeals's decision was made?

We have absolutely no authority to grant Newton's motion. Accordingly, Newton's motion should be dismissed.

This order on a motion is not the type of ruling that is subject to further review by another court. The majority's decision on this particular issue is really not so important, except that one of the reasons that we are so backlogged on this Court is that we seem to keep addressing the same decisions in the same case multiple times. We do not decide the issue once and move on, but rather we seem to return endlessly to the issues already decided. And the investment of my time in this dissenting opinion is largely academic, except to apprise the reader of the facts so that read-ers may draw their own conclusions about the propriety of the majority's actions. But if a person has any respect for the rule of law, the person would have to ask, why would the majority disregard and violate a rule that is so clearly applicable?

I expect that some ad hoc rationalization will follow the publication of this dissenting opinion. I will try not to spend any more of the reader's time responding to it, but I ask the reader to recognize it for what it is.