Curtis Lee BASS, Appellant

v.

The STATE of Texas, Appellee.

Nos. 14–05–00865–CR, 14–05–00855–CR.

Court of Appeals of Texas, Houston (14th Dist.).

March 8, 2007.

---

Robert A. Morrow, Spring, for appellants.

Kelly Ann Smith, Houston, for appellees.

Panel consists of Chief Justice HEDGES and Justices YATES and SEYMORE.

## OPINION

CHARLES W. SEYMORE, Justice.

A jury found appellant, Curtis Lee Bass, guilty of two counts of indecency with a child and sentenced him to ten years' probation for one count and ten years' imprisonment for the other count. In four issues, appellant contends (1) the trial court erred by admitting evidence of extraneous offenses in violation of the Texas Rules of Evidence and due process, (2) the evidence is legally and factually insufficient to support the conviction, (3) the trial court erred by excluding testimony that the complainant had falsely accused another man of sexual assault, and (4) the trial court erred by excluding evidence that one of the extraneous offenses at issue was no-billed by a grand jury.

## I. BACKGROUND

When complainant ("S.D.") was twenty-six years old, she accused appellant of subjecting her to indecent sexual contact. S.D. was sixteen-years old when the two incidents allegedly occurred. At the time of the incidents, appellant served as pastor to the church S.D. attended. S.D. also attended school with appellant's sons.

At trial, S.D. testified that both incidents occurred in 1994. First, on February 23, 1994, after school, appellant asked her to come by the church that day to help him with some paperwork. After they entered his office, he closed the door. He then massaged her shoulders, placed his hands on her hips, touched her breasts over her undershirt, touched her breasts under her undershirt, kissed her, and touched her vaginal area.

The second incident occurred on June 7, 1994, when S.D. went to the church to tell appellant to leave her alone. When she arrived, appellant was at the church entrance. He repeatedly invited S.D. into the church. However, she did not enter and told him that she had to leave. He then pulled her toward him and kissed her while touching her breasts, face, arms, and shoulders.

During fall 1994, S.D. told classmate, Crystal Wheeler, about the incidents. Wheeler repeated the allegations to her parents, who then informed school administrators. On November 7, 1994, S.D. met with the school principal, administrator, and secretary. S.D. testified the principal asked her in a sarcastic manner what appellant did to her, "smirking and laughing" after S.D. spoke. Afterwards, they escorted S.D. to another school building and told her to wait in an empty classroom. By the time the administrators retrieved S.D. from the classroom, school had been dismissed and her grandfather was waiting to pick her up. However, the administrators

did not allow S.D. to speak to her grandfather. They led her back to the administration office where appellant was waiting. While the administrators asked S.D. to say what happened, appellant sat in the room smirking, tapping his foot, and crossing his legs. During this meeting, appellant asked S.D. if there was a window in his office. She said, "no." Appellant then told her there was a window in his office. The administrators told S.D. they thought she was lying.

On May 26, 1995, as S.D. walked to her friend's house, appellant drove by and stopped next to her. He told her that "he wanted to put it all behind us," "he wanted me to forgive him," "he was sorry," and "he did not mean to lie." S.D. further explained "did not mean to lie" referred to the confrontation in the school administration office.

During August 2004, S.D. reported the two episodes to the police. She also produced a personal journal that had relevant entries made during the time period in consideration.

## II. ADMISSION OF EXTRANEOUS OFFENSES

In his first issue, appellant contends the trial court erred by admitting evidence of two extraneous offenses during the State's case-in-chief in violation of Texas Rule of Evidence 404(b) and appellant's due process rights. Appellant contends the extraneous offenses were inadmissable under Rule 404(b) because they were offered solely to establish character conformity. We agree.

### A. Rule of Evidence 404(b)

 Pursuant to Rule 404(b), evidence of extraneous offenses is not admissible during the guilt-innocence phase of a trial to prove a defendant acted in conformity with his bad character. TEX. R. EVID. 404(b). However, extraneous-of-

fense evidence may be "admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident" when it has relevance beyond character conformity. *Id.; Moses v. State*, 105 S.W.3d 622, 626 (Tex.Crim.App. 1991). Rebuttal of a defensive theory is also one of the permissible purposes for which evidence may be admitted under Rule 404(b). *Moses*, 105 S.W.3d at 626. "Probably the most common situation which gives rise to the admission of extraneous offenses is in rebuttal of a defensive theory." *Crank v. State*, 761 S.W.2d 328, 341 (Tex.Crim.App.1988)) *overruled on other grounds by Alford v. State*, 866 S.W.2d 619 (Tex.Crim.App.1993)); *see also Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim.App.2001). When determining whether evidence of extraneous offenses is admissible to rebut defensive theories, a trial court may consider a defensive theory raised in an opening statement. *See Powell*, 63 S.W.3d at 439 (citing *United States v. Bari*, 750 F.2d 1169, 1180 (2d Cir.1984); *United States v. Price*, 617 F.2d 455, 459–60 (7th Cir.1979); *United States v. Olsen*, 589 F.2d 351, 352 (8th Cir.1978)). Extraneous offense evidence is admissible to rebut defensive theories raised by the State's witnesses during cross-examination. *Ransom v. State*, 920 S.W.2d 288, 301 (Tex.Crim.App.1994). However, merely introducing evidence for a purpose other than character conformity, or any of the other enumerated purposes in Rule 404(b), does not render that evidence admissible. *Rankin v. State*, 974 S.W.2d 707, 709 (Tex.Crim.App.1996) (en banc). The extraneous offense must also be relevant to a "fact of consequence" in the case. *Id.*

 A trial court's decision to admit extraneous-offense evidence is reviewed for abuse of discretion. *Moses v. State*, 105 S.W.3d at 627. As long as the trial

court's ruling was within the zone of reasonable disagreement, we must affirm. *Id.* (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App.1991)). Whether extraneous-offense evidence has relevance apart from character conformity, as required by Rule 404(b), is a question for the trial court. *Id.* We owe no less deference to the trial judge in making this decision than any other relevancy determination. *Id.*

## B. Extraneous Offense Testimony

■ Before trial, the court granted appellant's motion in limine objecting to any evidence of extraneous offenses. During trial, out of the presence of the jury, the State informed the court regarding the substance of proposed extraneous-offense testimony and advised that the testimony was proffered for the purpose of rebutting appellant's claims regarding S.D.'s credibility. The State also noted that the extraneous offenses took place in the same church. The trial judge permitted the extraneous-offense testimony, concluding that the probative value outweighed any unfair prejudicial effect. The State then introduced testimony regarding incidents that involved appellant and two other children, J.P. and R.C.[1]

First, Richard Parmer, a former member of appellant's church, testified about an incident involving appellant and his daughter, J.P. The incident occurred when she was five-years old. Parmer explained that he was helping clean at the church when he opened the door to appellant's office and found his daughter sitting in appellant's lap. J.P.'s dress was above her waist and appellant's hands were on her. After Parmer entered the office, appellant appeared surprised and said that J.P.'s dress had ridden up, and he was helping her straighten it.

R.C. then testified that on April 1, 2002, when she was eleven-years old, she was helping clean at the church with her sister. Appellant told her to go inside with him to get some cleaning supplies. After she entered appellant's office, he touched her between her legs, kissed her on the lips, and touched her breasts. He stopped when the church front door opened. Afterwards, they retrieved the cleaning supplies. Appellant instructed R.C. not to tell anyone. However, R.C. told her mother and sister about the incident that same day.

## C. Analysis

Appellant argues the extraneous offenses were inadmissable under Texas Rule of Evidence 404(b) because they were offered solely to establish character conformity. Specifically, appellant contends extraneous-offenses are not admissible to rebut a fabrication defense and cites our decision in *Webb v. State*, 36 S.W.3d 164, 180–81 (Tex.App.-Houston [14th Dist.] 2000, pet. denied) (en banc). We agree with appellant.

In *Webb*, the fact issue in dispute was whether the defendant committed aggravated sexual assault of the complainant, a topless dancer. *Id.* at 180. At trial, the State presented testimony from another topless dancer, who had also been sexually assaulted by the defendant in a similar manner. *Id.* The trial court ruled extraneous-offense evidence was admissible because it was a "signature type" offense that showed " 'opportunity, plan, maybe motive, scheme....' " *Id.* However, we noted there was no dispute as to identity, motive, intent or any of the other Rule 404(b) exceptions. *Id.* The State contended the extraneous-offense evidence was offered for the purpose of challenging a

---

1. Prior to the testimony regarding both children, appellant received a running objection under Texas Rule of Evidence 103(a)(1) as to the extraneous offenses.

defensive theory raised during cross-examination of the complainant that she was mistaken or unsure about the events due to her level of intoxication. *Id.* However, we explained that evidence of an extraneous offense against the other topless dancer "could not assist the jury in its determination of whether the appellant sexually assaulted [the complainant] except by showing character conformity in violation of rule 404(b)." *Id.* at 180–81. Otherwise, any time a cross-examination challenged the complainant's credibility or recall, extraneous offenses would always be allowed in—totally eviscerating Rule 404(b) and the policies underlying the prohibition against the admission of such evidence. *Id.* at 181 n. 9.

Likewise, the ultimate fact in dispute in this case is whether appellant committed indecency with S.D. Appellant asserted fabrication as a defense throughout the trial. During opening statements, appellant challenged S.D.'s credibility by referring to S.D.'s accusations as "so bizarre, it is so ridiculous, it is not worthy of belief," "pure fabrication," and "so contrary to [appellant's] character, not worthy of belief." Appellant also questioned S.D.'s credibility on cross-examination. During the hearing outside the presence of the jury, the State argued that the purpose of the extraneous-offense witnesses was to rebut the claims appellant had made relative to S.D.'s credibility. However, as we also explained in *Webb*, evidence of appellant's extraneous offenses with J.P. and R.C. could not assist the jury in its determination of whether the appellant committed indecency with S.D., except by showing character conformity in violation of Rule 404(b). *See Webb*, 36 S.W.3d at 180–81.

The State contends *Webb's* precedential value is questionable because it was decided before three recent Court of Criminal Appeals cases: *Moses v. State*, 105 S.W.3d 622 (Tex.Crim.App.2003); *Wheeler v.*

*State*, 67 S.W.3d 879 (Tex.Crim.App.2002); and *Powell v. State*, 63 S.W.3d 435 (Tex. Crim.App.2001). The State argues these holdings make clear that extraneous offenses are admissible to rebut a fabrication defensive theory. We disagree with the State's interpretation of these three cases.

First, the State directs us to *Wheeler v. State*. In *Wheeler*, a child sexual assault case, the appellant asserted two defensive theories allowing extraneous offenses on rebuttal. 67 S.W.3d at 887. First, the defendant asserted a lack-of-opportunity defensive theory. *Id.* Based on this defensive theory, the court found the extraneous offenses relevant because the prior offense occurred with family members in the immediate vicinity. *Id.* Second, the defendant asserted a "frame-up" theory, contending he was the victim of a conspiracy motivated by greed. *Id.* The court found the extraneous offenses admissible to rebut the "frame-up" theory by showing the defendant's prior misconduct (which was very similar to the charged conduct) in circumstances involving neither money nor revenge as possible motives. *Id.* In support, the court explained extraneous offenses are admissible to rebut a "frame-up" defensive theory in a child sexual assault case, as long as the extraneous misconduct is at least similar to the charged offense and an instance where the "frame-up" motive does not apply. *Id.* at 887 n. 22 (citing *Boutwell v. State*, 719 S.W.2d 164, 179 (Tex.Crim.App.1985)).

In this case where the State asks us to apply Wheeler, the State confuses a "frame-up" defensive theory with a fabrication defensive theory. A frame-up theory suggests that one is the victim of a conspiracy. *Id.* at 887. Although a frame-up theory may include an implication of fabrication, it is not the same as a fabrication defense theory, in which the defendant contends the allegations are entirely

made up. The *Wheeler* court did not hold that extraneous offenses are admissible to rebut a fabrication defensive theory, as the State contends. Further, we find no evidence in the record that appellant asserted a "frame-up" defensive theory in this case.

The State also suggests that the decision in *Moses v. State* stands for admission of extraneous offenses to rebut a fabrication defensive theory. We disagree. *Moses* addressed the admission of extraneous offenses to rebut a retaliation defensive theory. 105 S.W.3d at 627. In *Moses*, the defendant, a tow-truck driver, was found guilty of bribery for offering to buy a cell phone for a police officer if the officer would use the phone to call the defendant before sending out a general broadcast over the radio to all tow-truck drivers. *Id.* at 624. Although charges were initially not filed against the defendant, they were later filed against the defendant after his wife, who worked at the police station at the time, complained about other police officers violating the tow-truck policy. *Id.* at 625. At trial, the defendant raised had two retaliation defense theories. *Id.* at 627. First, the defendant contended the charges were made up in retaliation for his wife's complaint. *Id.* Second, the defendant contended the charge was retaliatory based on timing because no charges were filed against appellant before his wife accused others of mishandling the tow-truck call procedure. *Id.* The court held the trial court did not abuse its discretion in admitting extraneous offenses to rebut the retaliation defenses. *Id.*

However, a retaliation defensive theory is not the same as a fabrication defensive theory. Under a retaliation defensive theory, the defendant asserts that a party did something in retaliation for an action. Although a retaliation theory may include an implication of fabrication, it is not the same as a fabrication theory. Moreover, we find no evidence in the record that appellant asserted a retaliation defensive theory in this case.

The State also suggests the holding in *Powell v. State* allows the admission of extraneous offenses to rebut a fabrication defensive theory. In that child indecency case, the defendant asserted a lack-of-opportunity defensive theory in both his opening statement and during cross-examination of the complainant. *Powell*, 63 S.W.3d at 439. The court held the trial court properly allowed evidence of extraneous offenses to rebut the lack of opportunity defensive theory. *Id.* at 438. The *Powell* court did not address a fabrication defensive theory as the State suggests.

In addition, the State contends the extraneous-offense testimony by R.C. and Richard Parmer rebutted appellant's subsequent testimony that he was never alone in his office with little girls. However, appellant made this statement during cross-examination. As a general rule, the defensive theory that the State wishes to rebut through the use of extraneous-offense evidence must be elicited on direct examination by the defense and may not be elicited by "prompting or maneuvering" by the State. *Wheeler*, 67 S.W.3d at 885. It is well-established that the State "may not rely on its own questioning on cross-examination to contradict the defendant and get in evidence of collateral matters and [extraneous offenses] which would otherwise be inadmissible." *Shipman v. State*, 604 S.W.2d 182, 185 (Tex.Crim.App. 1980). Because the statement was not elicited on direct examination by the defense but was instead elicited by the State on *cross examination*, it is not a defensive theory that the State may rebut through evidences of extraneous offenses. *See Wheeler*, 67 S.W.3d at 885.

In contrast, the Court of Criminal Appeals held in *Daggett v. State*, a child sexual assault case, the defendant opened

the door to extraneous-offense evidence that had already been entered during the State's case-in-chief when the defendant stated during his *direct examination*, " 'I have never done anything of the sort with a 16 year old girl period.' " 187 S.W.3d at 450. The court held that the subsequent denials cured any possible harm caused by the admission of the extraneous offense evidence. *Id.*

Finally, in reviewing this record, we cannot conclude that the extraneous-offenses had relevance under any of the "other purposes" outlined in Rule 404(b), apart from proving appellant's character or his actions in conformity therewith. Rule 404(b) proscribes admission of such evidence. Because the State did not identify any legitimate reason for allowing evidence of the extraneous offenses and our independent review of the record reveals none, we hold the trial court abused its discretion by admitting extraneous-offense evidence.

## D. Harm Analysis

 Having found that the trial court committed error, we must determine whether the trial court's error is reversible. A non-constitutional error that does not affect substantial rights must be disregarded. TEX. R. APP. P. 44.2(b). The erroneous admission of an extraneous offense is non-constitutional error. *Johnson v. State*, 84 S.W.3d 726, 729 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd). Substantial rights are not affected by the erroneous admission of evidence "if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect." *Motilla v. State*, 78 S.W.3d 352, 355 (Tex.Crim.App.2002). If the reviewing court has "grave doubts" that an error did not affect the outcome, that court must treat the error as if it did. *Webb*, 36 S.W.3d at 183. If the reviewing court is unsure whether the error affected the outcome, the court should treat the error as harmful—having a substantial and injurious effect or influence in determining the jury's verdict. *Id.* (citing *O'Neal v. McAninch*, 513 U.S. 432, 435, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995)).

 In conducting the harm analysis, an appellate court should consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the trial court's instructions to the jury, the State's theory, any defensive theories, closing arguments, and even voir dire if material to the appellant's claim. *Motilla*, 78 S.W.3d at 355-56; *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim.App.2000). In assessing harm, the factors to be considered are the nature of the evidence supporting the verdict, the character of the alleged error, and how the evidence might be considered in connection with the other evidence in the case. *Motilla*, 78 S.W.3d at 356; *Morales*, 32 S.W.3d at 867. The weight of the evidence of appellant's guilt is also relevant. *Motilla*, 78 S.W.3d at 359–60.

R.C.'s and Richard Parmer's testimony undoubtedly had more than a slight effect upon the jury's decision. Because appellant raised a fabrication defensive theory, the question here was whether appellant committed indecency with S.D. S.D. was the only person who could describe the incidents because the alleged conduct occurred when she was alone with appellant. Consequently, the striking similarities between the incidents alleged by S.D. and the two extraneous-offenses are important because the jury may have considered S.D.'s testimony together with the two very similar extraneous offenses. Considering the similarities between the extraneous offenses and this case, we note that both extraneous offenses and the first incident described by S.D. occurred when appellant was alone with a girl in his church

office. The manner of the touching of R.C. and S.D. was very similar—including kissing, touching between the legs, and touching the breasts. Although J.P. was sitting in appellant's lap when the touching occurred, the difference between that act and the incidents involving R.C. and S.D. would most likely have been due to the age difference between the girls. J.P. was five-years old at the time of the touching, while R.C. was eleven and S.D. was sixteen. In light of these facts, we have grave doubts that the trial court's error in admitting evidence of extraneous offenses involving two other girls did not affect the outcome. Therefore, we must treat the error as having a substantial and injurious effect upon the jury's verdict. We find the error harmful.[2] Appellant's first issue is sustained.

## III. LEGAL SUFFICIENCY

■ In appellant's second issue, he complains that the evidence is legally insufficient to support a conviction for indecency with a child. We address this claim even though we have sustained appellant's first issue because " '[a]n appellate court must always address challenges to the [legal] sufficiency of the evidence.' " *See Rankin v. State*, 46 S.W.3d 899, 901 (Tex.Crim.App.2001) (quoting *McFarland v. State*, 930 S.W.2d 99, 100 (Tex.Crim.App. 1996)).[3] In conducting a legal sufficiency review of a jury's finding of guilt, we view the evidence in the light most favorable to the verdict. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex.Crim.App.2000). We do not ask whether we believe the evidence at trial established guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307,

318-19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Rather, we determine only whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Cardenas v. State*, 30 S.W.3d 384, 389 (Tex.Crim.App.2000). In our review, we accord great deference " 'to the responsibility of the trier of fact [fairly to] resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.' " *Clewis v. State*, 922 S.W.2d 126, 133 (Tex.Crim.App.1996) (quoting *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781).

An individual commits indecency with a child if the person engages in sexual contact with a child younger than seventeen years old and is not the person's spouse or causes the child to engage in sexual contact. TEX. PENAL CODE ANN. § 21.11(a)(1) (Vernon 2003). "Sexual contact" means "any touch by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child; or (2) any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person" if committed with the intent to arouse or gratify the sexual desire of any person. TEX. PENAL CODE ANN. § 21.11(c) (Vernon 2003).

S.D. testified that appellant kissed her and touched her breasts and vaginal area. Further, both her grandfather, Thomas Dishman, and her childhood friend, Charlotte Nava, testified that S.D. had told them appellant had touched her. In addition, appellant offered S.D.'s entire five-hundred-fifteen page journal written be-

**2.** Having found reversible error based on the trial court's admission of the extraneous offenses, we need not address appellant's due process argument in issue one.

**3.** We need not address appellant's factual sufficiency challenge in the second issue and remaining issues three and four because unlike his legal sufficiency challenge, success on the other issues would not entitle appellant to acquittal instead of remand, and thus resolving them is not "necessary to final disposition of the appeal." *See* TEX. R. APP. P. 47.1.

tween August 27, 1992 and June 13, 1996, which actually contained evidence supporting the allegations. In the journal, she wrote that appellant "sexually assaulted" her and referred to the first incident as the "big secret" throughout the journal. Further, she wrote that she was scared of appellant and wanted him to leave her alone. She described occasions when she saw him. She wrote about appellant's driving by her house, his talking to her when he saw her, the second incident, and the confrontation at school by the school administration and appellant. In describing the confrontation, she specified that she pointed to her chest when asked where he had touched her.

From these facts, the jury could have reasonably concluded that appellant engaged in sexual contact with S.D. when she was younger than seventeen-years old. Thus, the evidence is legally sufficient to convict appellant of indecency with a child.

Accordingly, because the trial court committed reversible error by admitting extraneous-offense evidence, we reverse appellant's conviction and remand the case for a new trial.