IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-06-00160-CR

 

Bobby Blake Newton,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 

 



From the 272nd District Court

Brazos County, Texas

Trial Court No. 05-00731-CRF-272

 



Opinion ON PETITION FOR DISCRETIONARY REVIEW



 








            A jury convicted Bobby Blake Newton of
indecency with a child and aggravated sexual assault by contact and assessed
punishment at twenty years’ imprisonment on the indecency count and sixty
years’ imprisonment on the aggravated sexual assault count.  Newton contends in
four issues that: (1) the court abused its discretion by admitting outcry
testimony; (2) the court abused its discretion by admitting extraneous-offense evidence
under Rules of Evidence 404(b) and 403 (two issues); and (3) the evidence is legally
insufficient to support the conviction for indecency with a child.

On original submission, this Court affirmed the trial court’s judgment.  See
 Newton v. State, No. 10-06-160-CR, 2007 WL 926184 (Tex. App.—Waco Mar. 28, 2007) (mem. op.).  As authorized by Rule of Appellate Procedure 50, we
issue this modified opinion within thirty days after Newton filed his petition
for discretionary review.  Tex. R. App.
P. 50.  On reconsideration of the issues presented, we will reverse and
remand.

Venue

            Newton’s alleges in his fourth issue
that the evidence to support his conviction for indecency with a child is
legally insufficient because there is no evidence of venue in Brazos County.

            “Unless . . . disputed in
the trial court, or unless the record affirmatively shows the contrary, the
court of appeals must presume . . . that venue was proved in the
trial court.”  Tex. R. App. P.
44.2(c)(1); Henley v. State, 98 S.W.3d 732, 734 (Tex. App.—Waco 2003,
pet. ref’d).  To dispute proof of venue, the defendant must raise the issue
specifically in the trial court.  See Tex.
R. App. P. 33.1(a); Etchieson v. State, 574 S.W.2d 753, 759 (Tex.
Crim. App. 1978); Atwood v. State, 120 S.W.3d 892, 894-95 (Tex. App.—Texarkana 2003, no pet.); Mosley v. State, 643 S.W.2d 212, 216 (Tex.
App.—Fort Worth 1982, no pet.).  For the record to show affirmatively that the
State did not prove venue, “the record [must] affirmatively negate[ ] whatever
proof was made by the State on the matter of venue.”  Holdridge v. State, 707
S.W.2d 18, 21-22 (Tex. Crim. App. 1986).         Newton refers to evidence that
the abuse began in San Antonio.  The State refers to the complainant Jane Doe’s
testimony that the “sexual abuse” began when Doe moved to San Antonio and
continued until she moved to Franklin.  Doe lived in San Antonio before moving
to College Station in Brazos County and then to Franklin in neighboring Robertson County.  The State also refers to evidence that Newton “insert[ed] a finger into
[Doe’s] private area” once in Brazos County.

            Newton does not identify any place in
the record where he disputed venue in the trial court, nor does he attempt to
show that the record affirmatively negates the State’s proof of venue or that
the record affirmatively shows that mandatory venue lay elsewhere than in
Brazos County.  Therefore, we presume that the State proved venue in the trial
court, and we overrule Newton’s fourth issue.

Outcry Testimony

            Newton contends in his first issue
that the court abused its discretion by admitting outcry testimony.

            We review a trial court’s decision to
admit or exclude evidence under an abuse-of-discretion standard.  Oprean v.
State, 201 S.W.3d 724, 726 (Tex. Crim. App. 2007).  An abuse of discretion
occurs when the court’s decision lies outside the “zone of reasonable
disagreement.”  Id. (citing
Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on
reh’g)).

            Article 38.072 of the Code of Criminal
Procedure describes the proper outcry witness as “the first person, 18 years of
age or older, other than the defendant, to whom the child made a statement
about the offense.”  Tex. Code Crim.
Proc. Ann. art. 38.072, § 2(a)(2) (Vernon 2005).  The Court of Criminal
Appeals has construed this to mean the first adult “to whom the child makes a
statement that in some discernible manner describes the alleged offense. 
[This] statement must be more than words which give a general allusion that
something in the area of child abuse was going on.”  Garcia v. State,
792 S.W.2d 88, 91 (Tex. Crim. App. 1990); Hanson v. State, 180 S.W.3d 726,
729 (Tex. App.—Waco 2005, no pet.).  “[A] trial court has broad discretion in
determining” the proper outcry witness.  Garcia, 792 S.W.2d at 92; Hanson,
180 S.W.3d at 729; accord Elder v. State, 132 S.W.3d 20, 26 (Tex. App.—Fort
Worth 2004, pet. ref’d).

            The outcry witness, a psychotherapist
who treated Doe, testified outside the presence of the jury that her notes for
a date certain stated that Doe disclosed “that [Newton] had sexually abused
[Doe] in the past.”

            Newton argues that the witness’s
“testimony was a general conclusion of abuse that did not describe the act in a
discernible manner.”  Newton concedes that the witness was the first adult to
whom Doe made a statement concerning Newton’s offenses.  Although the witness’s
testimony indicates that Doe’s statement to her did not specify the manner or
means by which Newton “sexually abused” her, the statement did clearly allege
sexual abuse and clearly identified Newton as the abuser.  In view of the broad
discretion afforded trial courts in the determination of who is a proper outcry
witness, we cannot say that the court’s decision lies outside the “zone of
reasonable disagreement.”  See Savedra v. State, No. 03-99-590-CR, 2000
WL 1706992, at *2 (Tex. App.—Austin Nov. 16, 2000, pet. ref’d) (not designated
for publication).  Accordingly, we overrule Newton’s first issue.

Rule of Evidence 404(b)

            Newton contends in his second issue
that the court abused its discretion by admitting evidence of an extraneous
offense under Rule 404(b).  The State responds that the complained-of evidence
was admissible to rebut Newton’s defensive theory that the complainant had
fabricated the allegations against him.

            The abuse-of-discretion standard we
previously referenced likewise applies when reviewing a trial court’s decision
to admit extraneous-offense evidence under Rule 404(b).  Page v. State, 137
S.W.3d 75, 78 (Tex. Crim. App. 2004); Moses v. State, 105 S.W.3d 622, 626-27
(Tex. Crim. App. 2003).

            The complainant Doe is the
daughter of Newton’s former wife.  Doe
testified that Newton first sexually abused her when she was ten and awoke to
find Newton touching her vagina.  She said that he touched her in a similar
manner “a couple of [other] times.”  When she was around twelve, she awoke to find
 Newton inserting his finger in her vagina.  There were no other witnesses to these
assaults.  According to Doe, Newton did not say anything during the assaults,
and he never threatened her or told her not to tell anyone.

The extraneous-offense evidence came from L.D., Newton’s former stepdaughter from a marriage before Newton’s marriage to Doe’s mother.[1] 
L.D. testified that Newton molested her over a seven-year period during the
1980’s (about twenty-five years before the trial).  Her first memory was Newton forcing her to perform oral sex on him when she was nine or ten.  Another specific memory
L.D. had was of Newton engaging in sexual intercourse with someone else (whom
L.D. could not identify) and forcing L.D. to sit behind him and rub his
scrotum.  She could not remember how many times Newton molested her, nor could she
recall if he said anything during these sexual assaults.

On cross-examination, L.D. testified that Newton also had penetrated her vagina with his penis.  When she was in seventh grade, she
told her mother about Newton’s sexual abuse, but her mother did not believe
her.  The next year, she told a teacher, and the school notified Child Protective
Services, which investigated the allegations.  According to L.D., she recanted
because her mother pressured her to do so.

            A few years after L.D.’s mother and Newton divorced, L.D. married.  Her husband and she worked with Newton at a donut shop. 
L.D. testified that she later wrote Newton a letter that basically said,
“Blake, I heard you got married, heard you got kids.  Don’t do this to them.”  According
to L.D., the letter went into enough detail to make it clear that Newton had sexually assaulted her.  As a result of the letter, Doe’s mother called L.D. to
discuss the letter’s contents.

            L.D. started therapy in 2003, about
three years before trial, because she had begun cutting herself.  She was
diagnosed with bipolar disorder, severe depression, and anxiety.  She attempted
suicide when she first started therapy.

            At the end of L.D.’s testimony, the
trial court gave the jury an oral instruction limiting their consideration of
L.D.’s testimony solely to “rebut the defensive theory of fabrication in
connection with the offense alleged in the indictment before you in this cause
and for no other purpose.”

“Rule 404(b) allows evidence of other crimes,
wrongs, or acts if the evidence has relevance apart from character
conformity.”  Moses, 105 S.W.3d at 626 (emphasis added).  Rebuttal of a defensive theory is one
of the permissible purposes for which evidence may be admitted under Rule
404(b).  See Casey v. State, 215 S.W.3d 870, 880-82 (Tex. Crim. App. 2007); Moses, 105 S.W.3d at 626; Ransom v. State, 920
S.W.2d 288, 301 (Tex. Crim. App. 1996) (op. on reh’g).  In determining whether
extraneous-offense evidence is admissible to rebut a defensive theory, a trial
court can consider a defensive theory raised by defense counsel in an opening
statement.  See Powell v. State, 63 S.W.3d 435, 438-39 (Tex. Crim. App. 2001); Bass v. State, No. 14-05-865-CR, 2007 WL 703761, at *2 (Tex. App.—Houston [14th Dist.] Mar. 8, 2007, pet. filed).  Extraneous-offense evidence is
also admissible to rebut a defensive theory raised during cross-examination of
a State’s witness.  See Ransom, 920 S.W.2d at 301; Bass, 2007 WL
703761, at *2; Swarb v. State, 125 S.W.3d 672, 683 (Tex. App.—Houston [1st Dist.] 2003, pet. dism’d).

The introduction of extraneous-offense evidence
for a purpose other than character conformity, such as to rebut a defensive theory,
does not by itself make the evidence admissible.  Webb
v. State, 36 S.W.3d 164, 180-81 (Tex. App.—Houston [14th Dist.] 2000, pet. ref’d) (en banc) (citing Rankin v. State, 974 S.W.2d
707, 709 (Tex. Crim. App. 1998)).  The extraneous-offense evidence must also be
relevant to a “fact of consequence” in the case.  Id. (citing Rankin,
974 S.W.2d at 709; Owens v. State, 827 S.W.2d 911, 914 (Tex. Crim. App.
1992)); see also Tex. R.
Evid. 401 (“‘Relevant evidence’ means evidence having any tendency to
make the existence of any fact that is of consequence to the determination of
the action more probable or less probable than it would be without the
evidence.”).

Newton contends that he did not raise fabrication as a defensive
theory.  The State disagrees, arguing
that Newton raised the theory that Doe fabricated her allegations, either out
of ill will toward Newton or at her mother’s prompting, in his examination of
the venire panel during jury selection, in cross-examination of the State’s
witnesses, and in closing argument.

The State refers in particular to Newton’s cross-examination of Doe.  Although much of that cross-examination involved
general impeachment of Doe with prior inconsistent statements, some of the
cross-examination did tend to raise the fabrication theory.  For example,
Newton brought out that Doe hated and had no respect for Newton, disliked that
he was “bossy,” resented that he came between her mother and her, felt better
when she moved away from him, and first alleged that he sexually abused her only
after she had learned that her mother might reconcile with him.

The State also refers
to Newton’s voir-dire examination, in which he asked:

Do you think that someone is—when I
say a ‘child’ in their teens—do you think someone in their teens is able to
make up a story that’s not true?  Does everybody agree with that?

 

Do you think that—we
talked about—[the State] talked about the reason why people don’t make outcries
is because they’re scared to say something about it.  I forgot who said
something, but they basically said that a child can be manipulated not to tell
what has happened by an adult.

 

The adult has told
them either by force or, you know, ‘This will happen to you if you say this.’ 
But do you think the converse of that, do you think that basically an adult can
manipulate a child to say something?  When I say ‘child’—again, teenagers. 
Does everybody agree with that?

Finally, the State refers to Newton’s closing argument. 
There, Newton suggested that Doe fabricated the allegation against Newton to
prevent her mother’s reconciliation with Newton, or that she did so at the
prompting of her mother (as Doe made her allegation immediately before her
mother filed for divorce from Newton) or at the prompting of her first
therapist.

From our review of the record, we agree with the State
that Newton raised the issue of fabrication as a defensive theory.  See Bass,
2007 WL 703761, at *4.

In Bass, the Fourteenth Court of Appeals addressed
whether extraneous offenses are admissible to rebut the defensive theory of
fabrication.[2]

Appellant argues the extraneous
offenses were inadmissible under Texas Rule of Evidence 404(b) because they
were offered solely to establish character conformity.  Specifically, appellant contends extraneous
offenses are not admissible to rebut a fabrication defense and cites our
decision in Webb v. State, 36 S.W.3d 164, 180-81 (Tex. App.—Houston [14th Dist.] 2000, pet. [ref’d]) (en banc).  We agree with appellant.

 

Id.,
2007 WL 703761, at *3.  

            A fabrication defense theory is one
“in which the defendant contends the allegations are entirely made up.”  Id., 2007 WL 703761, at *4.  The Bass court relied heavily on its en banc
decision in Webb:

            In Webb, the fact
issue in dispute was whether the defendant committed aggravated sexual assault
of the complainant, a topless dancer.  At trial, the State presented testimony
from another topless dancer, who had also been sexually assaulted by the
defendant in a similar manner.  The trial court ruled extraneous-offense
evidence was admissible because it was a “signature type” offense that showed “’opportunity,
plan, maybe motive, scheme . . . .’”  However, we noted there was no
dispute as to identity, motive, intent or any of the other Rule 404(b)
exceptions.  The State contended the extraneous-offense evidence was
offered for the purpose of challenging a defensive theory raised during
cross-examination of the complainant that she was mistaken or unsure about the
events due to her level of intoxication.  However, we explained that evidence
of an extraneous offense against the other topless dancer “could not assist the
jury in its determination of whether the appellant sexually assaulted [the
complainant] except by showing character conformity in violation of rule 404(b).” 
Otherwise, any time a cross-examination challenged the complainant’s
credibility or recall, extraneous offenses would always be allowed in—totally
eviscerating Rule 404(b) and the policies underlying the prohibition against
the admission of such evidence.

 

Id.,
2007 WL 703761, at *3 (citing Webb, 36 S.W.3d at
180-81 & n.9).

 

            Next, the Bass court explained
why several Court of Criminal Appeals cases decided after Webb do not
support the State’s contention that extraneous offenses are admissible to rebut
a fabrication defense theory.  See id., 2007 WL 703761, at *4-5 (citing Moses v. State, 105 S.W.3d 622 (Tex. Crim. App.
2003); Wheeler v. State, 67 S.W.3d 879 (Tex. Crim. App. 2002); Powell
v. State, 63 S.W.3d 435 (Tex. Crim. App. 2001)).

We agree with Bass and its rationale.  Extraneous-offense
evidence is not admissible to rebut a fabrication defense.  In this case, the
ultimate fact of consequence in dispute is whether Newton committed the
offenses of indecency by sexual contact and aggravated sexual assault against Doe. 
The evidence of Newton’s 25-year-old extraneous offenses with L.D. could not
assist the jury in its determination of whether Newton committed the charged
offenses against Doe, other than to show character conformity in violation of
Rule 404(b).  See id., 2007 WL 703761, at *4; Webb, 36 S.W.3d at 180-81. 
Thus, the court abused its discretion by admitting the extraneous-offense
evidence pertaining to L.D.

Harm Analysis

We must now determine whether this error affected Newton’s substantial rights.  See Tex. R.
App. P. 44.2(b).  We “consider everything in the record, including any
testimony or physical evidence admitted for the jury’s consideration, the
nature of the evidence supporting the verdict, the character of the alleged
error and how it might be considered in connection with other evidence in the
case.”  Motilla v. State, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002); Shook
v. State, 172 S.W.3d 36, 41 (Tex. App.—Waco 2005, no pet.); accord
Geuder v. State, 142 S.W.3d 372, 376 (Tex. App.—Houston [14th Dist.] 2004,
pet. ref’d).  We may also consider the jury instructions, the State’s theory of
the case, any defensive theories, closing arguments, voir dire, and the extent
to which the State emphasized the erroneously admitted evidence.  See
Motilla, 78 S.W.3d at 355-56; Shook, 172 S.W.3d at 41; Geuder,
142 S.W.3d at 376.

In this analysis, we decide whether “the error had
a substantial and injurious effect or influence in determining the jury’s
verdict.”  Haley v. State, 173 S.W.3d 510, 518 (Tex. Crim. App. 2005). 
If we have “‘a grave doubt’ that the result [of the underlying proceeding] was
free from the substantial influence of the error, then [we] must treat the
error as if it [had a substantial influence on the outcome].”  Burnett v.
State, 88 S.W.3d 633, 637 (Tex. Crim. App. 2002).  Stated another way, “in
cases of grave doubt as to harmlessness the petitioner must win.”  Id. at 638 (quoting O’Neal v. McAninch, 513 U.S. 432, 437, 115 S. Ct. 992,
995, 130 L. Ed. 2d 947 (1995)).

L.D. gave extensive testimony about her life, her
emotional problems, and Newton’s alleged sexual assaults against her.  Her
testimony consumes nearly as many pages of the reporter’s record as Doe’s.[3] 
The evidence of guilt cannot be characterized as overwhelming.[4] 
The State placed great emphasis on L.D.’s testimony in closing argument.

L.D.’s testimony
significantly bolstered the State’s case and prejudiced Newton.  See Abdnor
v. State, 871 S.W.2d 726, 738 (Tex. Crim. App. 1994) (“The admission of
extraneous offenses also prejudices the defendant because of the jury’s natural
inclination to infer guilt to the charged offense from the extraneous offenses.”). 
Although the jury could have viewed Doe’s testimony as credible by itself,
L.D.’s damaging testimony almost certainly played a significant role in Newton’s conviction.  See Webb, 36 S.W.3d at 183; see also Bass, 2007
WL 703761, at *7; cf. Martinez v. State, 188 S.W.3d 291, 293-94 (Tex.
App.—Waco 2006, pet. ref’d) (erroneous admission of outcry testimony had more
than slight influence on verdict in indecency with child case and was
harmful).  And the State’s emphasis on the extraneous offenses in closing
argument augmented the harm to Newton.  See Booker v. State, 103 S.W.3d
521, 538-39 (Tex. App.—Fort Worth 2003, pet. ref’d); see also Reese v.
State, 33 S.W.3d 238, 244 (Tex. Crim. App. 2000) (noting in harm analysis
that State’s emphasis on erroneously admitted evidence during argument “sent
the jury into deliberations thinking about” that evidence).  Thus, we conclude
that the erroneous admission of the extraneous offenses involving L.D. was
harmful because it had a substantial and injurious effect on the jury’s
verdict.

Accordingly, we
sustain Newton’s second issue.  Having sustained the second issue, we need not
address his third issue.

Conclusion

We reverse the judgment and remand this cause to the trial court
for further proceedings consistent with this opinion.  The opinion and judgment
dated March 28, 2007 are withdrawn, and Newton’s petition for discretionary review is dismissed
by operation of law.  See Tex. R.
App. P. 50.

 

FELIPE REYNA

Justice

 

 

Before
Chief Justice Gray,

Justice Vance, and

Justice Reyna

(Chief Justice Gray dissenting)[5]

Reversed
and remanded

Opinion
delivered and filed June 13, 2007

Publish

[CRPM]

 









[1]
              L.D. was 35 years old at the
time of trial.





[2]               After the briefs were filed and
this case was submitted, Newton filed a letter brief attaching a copy of Bass
and setting out its holding.  The State did not reply to Newton’s letter brief.





[3]
              The State suggests that only
10 pages of L.D.’s direct examination should be considered in determining the
amount of trial time devoted to this extraneous-offense evidence.  However,
because the State’s only purpose for calling L.D. as a witness was for the
admission of the extraneous-offense evidence, we conclude that the entirety of
L.D.’s testimony (62 pages) must be included in this calculation.

 





[4]
              The State says as much in its
brief when it states that it “had a strong need to refute” the defensive theory
of fabrication with the extraneous-offense evidence because “[t]here was no
physical evidence or eyewitnesses.”





[5]
              In reading the
dissenting opinion’s prefatory comments, we are reminded of the recent
observation of the Court of Criminal Appeals:

 

First, the statement[s] [are]
unnecessary; [they] contribute[ ] nothing to the legal issue before us. Second,
and most importantly, [they are] highly unprofessional.  When a judge
chastises other members of the judiciary in this manner, it not only reflects
poorly on the judge, it undermines the integrity of the justice system.
 The words of Supreme Court Justice Kennedy are particularly appropriate
here:

 

The collegiality of the judiciary can
be destroyed if we adopt the habits and mannerisms of modern, fractious
discourse.  Neither in public nor in private must we show disrespect for
our fellow judges.  Whatever our failings, we embody the law and its
authority.  Disrespect for the person leads to disrespect for the cause.

 

If public respect for the judiciary is
to be maintained, it must begin from within.  

 

Ex parte Olivares, 202 S.W.3d 771, 773 (Tex. Crim. App. 2006) (quoting
Anthony M. Kennedy, Judicial Ethics and the Rule of Law, 40 St. Louis
U. L.J. 1067, 1072 (1996)).