IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-06-00332-CR

 

Hector Rene Galvez,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 

 



From the 54th District Court

McLennan County, Texas

Trial Court No. 2005-1483-C

 



MEMORANDUM  Opinion



 








            A jury convicted Hector Rene Galvez of
two counts of aggravated sexual assault, and the trial court imposed an
automatic sentence of life in prison.  Galvez argues that the trial court erred
by: (1) admitting extraneous-offense evidence; (2) denying Galvez’s challenges
for cause to three members of the venire panel; (3) excluding evidence of Galvez’s
voluntary statement; and (4) admitting evidence of the procedure used for
compiling a photographic lineup.  We reverse and remand.

 

Extraneous-offense
Evidence

            In his first issue, Galvez
contends that the trial court abused its discretion by admitting extraneous-offense
evidence.  The State argues that this evidence was admissible to rebut Galvez’s
defensive theory of frame-up.  We review a trial court’s admission of extraneous-offense
evidence for abuse of discretion.  See Page v. State, 213
S.W.3d 332, 337-38 (Tex. Crim. App. 2006).

Factual Background

            L.H. was walking home when
a vehicle approached her.  The driver pointed a gun with a laser beam at her
and ordered her to enter the vehicle.[1] 
He physically assaulted L.H. and forced her to perform oral, vaginal, and anal
sex.  At some point, he told L.H. that he was going to kill her and instructed
her to exit the vehicle.  L.H. began yelling at him and stated that he would
have to kill her inside the vehicle.  She was eventually forced out of the
vehicle.  She began knocking on doors to find help.  A neighbor contacted the
police.  L.H. told the police that she was physically assaulted, but did not
disclose the sexual assault.  However, the next morning, she told a friend that
she had been raped.

A few days later, after experiencing
some pain and bleeding, she disclosed the sexual assault.  Dr. Johnny Howton examined L.H. and testified that she suffered from an anal fissure and
internal hemorrhoids which could result from “physical trauma” and were not
inconsistent with sexual assault.  He testified that these problems could also
be caused by others health issues, none of which L.H.
exhibited at the time she was examined.  L.H.
also suffered from pelvic inflammatory disease, a sexually transmitted disease. 
L.H. had a history of drug abuse, mental illness, and various physical
problems.

            Detective Christina
Woodruff testified that a sexual assault examination was not performed because
too much time had passed since the assault allegedly occurred.  L.H. told
Woodruff that her attacker had pierced nipples and a tattoo on his stomach. 
Woodruff prepared a photographic lineup from which L.H. identified Galvez as
her attacker.  L.H. also identified Galvez at trial.

Galvez’s girlfriend testified that she called
Galvez on the night that L.H. was attacked and
heard a woman yelling, “you’re going to have to kill me.”  Galvez later provided
multiple explanations for what happened that night, including that he had picked
L.H. up as a prostitute and that they had only
engaged in oral sex.  She further testified that Galvez had once commented,
“How do you rape a hooker?”  L.H. admitted
that she had engaged in prostitution in the past, but not on the night she was
attacked.

            Galvez argued that a
dispute over money led to the physical assault and L.H. fabricated the sexual
assault allegations because she was angry over “being beaten up.”  The State
called D.V. and J.M. to rebut this theory.  D.V. testified that she was walking
home when a vehicle approached her.  The driver, whom she identified as Galvez,
offered her a ride and D.V. accepted.  Galvez asked for cocaine, which D.V.
claimed she did not have.  Galvez pulled a knife on D.V., forced her to perform
oral sex, and sexually assaulted her.  When she refused to engage in anal sex, he
ordered her to exit the vehicle and kicked her as she was exiting.  D.V.
testified that Galvez had a chin piercing and nipple piercings.  

J.M. testified that she was walking to
her father’s home when a vehicle approached her.  The driver, whom she
identified as Galvez, offered her a ride.  J.M. agreed to exchange sex for the
ride, but testified that she did not plan on following through with this
agreement.  Galvez took J.M. to a secluded area and sexually assaulted her.  He
eventually told J.M. to exit the vehicle.  J.M. testified that Galvez had several
piercings and two tattoos.

Prior to the testimony of both D.V.
and J.M., the trial court gave an oral instruction limiting the jury’s
consideration of D.V.’s and J.M.’s testimony to “rebut the defensive theory of
fabrication, if any, in connection with this offense, if any, alleged against
the defendant in the indictment and for no other purpose.”[2]  The trial court included a virtually
identical instruction in the jury charge.

Analysis

Galvez argues that the trial court abused its
discretion by admitting the extraneous-offense evidence.  The State responds
that this evidence was admissible under Wheeler v. State, 67
S.W.3d 879 (Tex. Crim. App. 2002), and Dennis v. State, 178 S.W.3d 172
(Tex. App.—Houston [1st Dist.] 2005, pet. ref’d), to rebut Galvez’s defensive
theory and contends that our decision in Newton v. State, No. 10-06-00160-CR, 2007 Tex. App. Lexis 4634 (Tex. App.—Waco June 13, 2007, pet. filed) conflicts with these cases.

In Wheeler, a jury convicted Wheeler of
sexually assaulting S.E.  See Wheeler, 67 S.W.3d at 880.  He argued that
he “was never alone with S.E., and therefore lacked an opportunity to abuse
her, or alternatively, that it would have been impossible for appellant to
abuse her in a room full of people.”  Id. at 887.  Because S.E.’s
parents had filed a civil suit against him, he also “suggested that he was the
victim of a conspiracy or frame-up motivated by greed.”  Id.  The
State called Wheeler’s niece, S.S., to rebut these theories.  See id.  The Court of Criminal Appeals held that S.S.’s
testimony was relevant to rebut Wheeler’s “theory of lack of opportunity or
impossibility” and “served to contradict appellant’s ‘frame-up’ theory by
showing appellant’s prior misconduct (very similar to that for which he was
charged in the present case) in circumstances involving neither money nor
revenge as possible motives.”  Id.  The Court noted that:

An extraneous-offense may be admissible to rebut
the defense in a child sexual assault case that the defendant is the innocent
victim of a “frame-up” by the complainant or others. In such a situation, the
extraneous misconduct must be at least similar to the charged one and an
instance in which the “frame-up” motive does not apply.

 

Id. at 888 n.22 (internal citations omitted).

 

In Dennis, a jury convicted Dennis of
sexually assaulting F.S.  See Dennis, 178 S.W.3d at 175.  Dennis argued
that “F.S. fabricated the sexual assault allegations because she was
angry at him for taking away her cellular telephone and for disciplining
her because of her poor grades in school” and solicited testimony that “F.S.
was angry when he took her cellular telephone from her and that children may
fabricate allegations out of anger.”  Id. at 178.  The State sought to
introduce M.W.’s testimony to rebut this theory.  See id. at 176.  Before
M.W.’s testimony was introduced, the trial court gave an oral instruction
limiting the jury’s consideration of M.W’s testimony to ”rebut the defensive
theory of fabrication, if any, in connection with this offense, if any, alleged
against him in the indictment and for no other purpose.”  Id. at
176-77.  The First Court held that “M.W.’s testimony is relevant rebuttal
evidence showing that under similar circumstances, Dennis sexually assaulted
another child.”  Id. at 178.  The extraneous and charged offenses were similar
enough
“to allow use of the extraneous-offense
evidence to rebut Dennis’s theory that F.S. framed him.”  Id. at 179.                   


            In Newton, a jury convicted Newton of sexually assaulting Doe.  See Newton, 2007 Tex. App. Lexis 4634, at *1.  Newton suggested that Doe
fabricated the allegations to “prevent her mother’s reconciliation with Newton, or that she did so at the prompting of her mother (as Doe made her allegation
immediately before her mother filed for divorce from Newton) or at the
prompting of her first therapist.”  Id. at *11.  The State called L.D. to testify that Newton had sexually assaulted her twenty-five years earlier.  See id. at *6.  The trial court gave an oral instruction limiting
the jury’s consideration of L.D.’s testimony to “rebut the defensive theory of
fabrication in connection with the offense alleged in the indictment before you
in this cause and for no other purpose.”  Id. at *8.  We found that “Newton raised the issue of fabrication as a defensive theory,” but “[e]xtraneous-offense
evidence is not admissible to rebut a fabrication defense.”  Id. at *11,
14.  In reaching this decision, we relied on Bass v. State, 222 S.W.3d 571 (Tex. App.—Houston
[14th Dist.] 2007, pet. filed).

            In Bass, a jury convicted Bass of
indecency with a child against S.D.  See Bass, 222 S.W.3d at 573.  The
State introduced testimony of other incidents with J.P. and R.C.  Id. at 575.  The Fourteenth Court stated that “evidence of appellant’s extraneous-offenses
with J.P. and R.C. could not assist the jury in its determination of
whether the appellant committed indecency with S.D., except by showing
character conformity in violation of Rule 404(b).”  Id. at 576.  The Court found Wheeler inapplicable:

In this case where the State asks us to apply
Wheeler, the State confuses a “frame-up” defensive theory with a fabrication
defensive theory. A frame-up theory suggests that one is
the victim of a conspiracy. Although a frame-up theory may include an
implication of fabrication, it is not the same as a fabrication defense theory,
in which the defendant contends the allegations are entirely made up. The Wheeler court
did not hold that extraneous-offenses are admissible to rebut a fabrication
defensive theory, as the State contends. Further, we find no evidence in the
record that appellant asserted a “frame-up” defensive theory in this case.         

 

Id. at 576-77 (internal citations omitted).[3]

 

            We do not agree that Newton
conflicts with Wheeler.  In Wheeler, the record contained
evidence of a “frame-up” defensive theory, while in Newton and Bass,
the record did not contain such evidence.  Newton does not hold that
evidence of extraneous-offenses could not be used to rebut the defensive theory
of “frame-up.”[4]  Moreover,
we decline to follow Dennis because, like the State did in Bass,
it appears to confuse the defensive theory of frame-up with the defensive
theory of fabrication.  See Bass, 222 S.W.3d at 576-77.  Accordingly, we
must follow Wheeler, Newton, and Bass to determine whether
Galvez asserted a frame-up defensive theory or one of fabrication.   

In voir dire, Galvez asked the following
questions:

The first thing I want to know about is your
response or your feelings to this statement.  Here’s a statement: No one would
deliberately lie in accusing someone else of committing a serious crime.

 

…would somebody make up a lie about somebody else
regarding a serious matter?

 

I’m not talking about little white lies.  I’m
talking about somebody raped me, okay?

 

Why would somebody lie about a serious matter?

 

…would somebody do that for revenge?

 

In opening statements, Galvez argued that L.H.
fabricated allegations of sexual assault because she was angry that he
refused to pay her and “rough[ed] her up,” wanted revenge, and realized that “a simple assault charge is not
enough and she wants him to pay so she spins the yarn.”  On cross-examination of L.H., Galvez asked:

But you had the presence of mind, you say when you
got out of the car to try to grab the nipple ring so you could get some blood
for a DNA match and grab this toy gun so you could get fingerprints or
whatever.  And yet, when you got to the hospital you didn’t tell them about
being raped or sex?

 

And then five days later you went back to
Hillcrest, right?

 

And, of course, by this time there would be no
physical evidence on you such as semen to prove that there had even been sex,
correct?

 

Well, you had the presence of mind to try to take
the gun and grab the nipple [ring] off and get DNA evidence and blood
evidence.  So it sounds like you were trying to build a case against Mr.
Galvez, correct?

 

In closing statements, Galvez argued that L.H. was
lying.                                   

Our review of the record reveals that Galvez
raised the defensive theory of fabrication, not frame-up.[5] 
He did not suggest that he was the “victim of a conspiracy,” but rather that L.H.’s
sexual assault allegations were “entirely made up.”  Bass, 222
S.W.3d at 576-77.  The testimony of D.V. and J.M.
was not admissible to rebut the defensive theory of fabrication.  See Newton, 2007 Tex. App. Lexis 4634, at *14. 
The trial court abused its discretion by admitting this testimony.  Id.

We must now determine whether this error affected Galvez’s
substantial rights. See Tex. R.
App. P. 44.2(b);
see also Newton, 2007 Tex. App. Lexis 4634, at *14.  We “consider
everything in the record, including any testimony or physical evidence admitted
for the jury’s consideration, the nature of the evidence supporting the
verdict, the character of the alleged error and how it might be considered in
connection with other evidence in the case.”  Motilla v. State, 78 S.W.3d 352, 355 (Tex. Crim.
App. 2002); Shook v. State, 172 S.W.3d 36, 41 (Tex. App.—Waco
2005, no pet.); accord Geuder v. State, 142 S.W.3d 372, 376 (Tex. App.—Houston
[14th Dist.] 2004, pet. ref’d).  We may also consider the jury
instructions, the State’s theory of the case, any defensive theories, closing
arguments, voir dire, and the extent to which the State emphasized the
erroneously admitted evidence.  See Motilla, 78 S.W.3d at 355-56;
see also Shook, 172 S.W.3d at 41; Geuder, 142 S.W.3d at 376.  We
decide whether “the error had a substantial and injurious effect or influence
in determining the jury’s verdict.”  Haley v. State, 173 S.W.3d 510, 518 (Tex. Crim.
App. 2005).  If we have “‘a grave doubt’ that the result [of the
underlying proceeding] was free from the substantial influence of the error,
then [we] must treat the error as if it [had a substantial influence on the
outcome].”  Burnett v. State, 88 S.W.3d 633, 637 (Tex. Crim.
App. 2002).  “[I]n cases of grave doubt as to harmlessness the
petitioner must win.”  Id. at 638 (quoting O'Neal v. McAninch, 513 U.S. 432, 437, 115 S. Ct.
992, 995, 130 L. Ed. 2d 947 (1995)).

Because fabrication was an issue at trial, the
ultimate question was whether Galvez sexually assaulted L.H.  Galvez and
L.H. were the only direct witnesses and no physical evidence linked Galvez to a
sexual assault, leaving L.H.’s testimony as the only direct evidence that
Galvez committed sexual assault.  Her credibility was heavily challenged.  D.V. and J.M. provided the details of their assaults
and each identified Galvez as their attacker.  Their accounts are noticeably
similar to that of L.H.  Detective Darrell Patterson and Detective Woodruff
also provided some testimony as to the D.V. and J.M.
cases.  Galvez’s girlfriend testified that, in a letter, Galvez mentioned picking
up two other girls other than L.H.  In closing argument, the State discussed D.V.’s and J.M.’s testimony, arguing that the jury
heard this testimony because Galvez had accused L.H. of fabrication and
directing the jury to the similarity among all three cases.

The evidence that Galvez sexually assaulted L.H.
is not overwhelming.  We have grave doubts as to whether Galvez’s conviction was
free from the substantial influence of the erroneous admission of D.V.’s and J.M.’s testimony.  See Burnett, 88 S.W.3d at 637. 
The testimony significantly bolstered the State’s case and prejudiced Galvez.  See
Abdnor v. State, 871 S.W.2d 726, 738 (Tex. Crim.
App. 1994) (“admission of extraneous-offenses also prejudices the
defendant because of the jury’s natural inclination to infer guilt to the
charged offense from the extraneous-offenses”).  The jury could have viewed L.H.’s
testimony alone as credible, but D.V.’s and J.M.’s
testimony almost certainly played a significant role in Galvez’s conviction.  See
Webb v. State, 36 S.W.3d 164, 183
(Tex. App.—Houston [14th Dist.] 2000, pet. ref’d); see also Bass, 222 S.W.3d at 578-79. 
This harm was amplified by the State’s discussion of the extraneous-offenses in
closing argument.  See Booker v. State, 103 S.W.3d 521, 538-39 (Tex.
App.—Fort Worth 2003, pet. ref’d); see also Reese v. State, 33 S.W.3d 238, 244 (Tex. Crim.
App. 2000) (State’s emphasis on erroneously admitted evidence during
argument “sent the jury into deliberations thinking about” that evidence).

We hold that the erroneous admission of the extraneous-offenses
involving D.V. and J.M. was harmful because it
had a substantial and injurious effect on the jury’s verdict.  We sustain
Galvez’s first issue and need not address his remaining issues.
See Tex. R. App. P. 47.1. 
We reverse the judgment and remand this cause to the trial court for further
proceedings consistent with this opinion.

 

 

 

FELIPE REYNA

Justice

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

(Chief
Justice Gray dissenting)

Reversed and remanded

Opinion delivered and
filed February 27, 2008

Do not publish

[CRPM]









[1]               The gun was later determined to be a
toy with a laser beam taped to the top.

  





[2]               In a hearing outside the jury’s
presence, Galvez objected to D.V.’s and J.M.’s
testimony on the basis of due process and Rules of Evidence 403 and 404(b).





[3]               Bass relied on Webb v. State, 36 S.W.3d 164 (Tex. App.—Houston
[14th Dist.] 2000, pet. ref’d) (en banc).  See
Bass v. State, 222 S.W.3d 571, 575-76 (Tex.
App.—Houston [14th Dist.] 2007, pet. filed).

 





[4]               The State also
argues that Newton conflicts with Hulsey v. State, 211 S.W.3d 853 (Tex. App.—Waco 2006, no pet.), wherein we held:

 

“There is no presumption that the
joinder of cases involving aggravated sexual assault against different children
is unfairly prejudicial.”  We agree with the State that, because of Hulsey’s
defensive theory that all of the allegations were fabricated (Hulsey testified
that the allegations were fabricated so his wife could get Hulsey out of the
house and keep property she was awarded in their divorce, and because Hulsey
had killed Chelsea’s dog), had there been three separate trials, all three
children’s testimony probably would have been admissible in separate trials to
rebut his defensive theory of fabrication. 

 

Hulsey, 211 S.W.3d at 858 (internal citations omitted).  However, Hulsey
contained elements of both fabrication and frame-up, given that Hulsey alleged
that his wife conspired with the children.  See id.





[5]               The State argues that Galvez also
raised the defensive theory of consent.  He points to Galvez’s trial arguments
that L.H. was a prostitute and that there was an argument over money.  However,
the record indicates that these arguments were made in support of Galvez’s
fabrication theory rather than a separate consent theory.