**Bobby Blake NEWTON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–06–00160–CR.**

Court of Appeals of Texas,
Waco.

June 13, 2007.

Discretionary Review Granted
Jan. 14, 2009.

Brian W. Wice, Houston, TX, for appellant.

Bill R. Turner Brazos County Dist. Atty., Bryan, TX, for The State of Texas.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION ON PETITION FOR DISCRETIONARY REVIEW

FELIPE REYNA, Justice.

A jury convicted Bobby Blake Newton of indecency with a child and aggravated sexual assault by contact and assessed punishment at twenty years' imprisonment on the indecency count and sixty years' imprisonment on the aggravated sexual assault count. Newton contends in four issues that: (1) the court abused its discretion by admitting outcry testimony; (2) the court abused its discretion by admitting extraneous-offense evidence under Rules of Evidence 404(b) and 403 (two issues); and (3) the evidence is legally insufficient to support the conviction for indecency with a child.

On original submission, this Court affirmed the trial court's judgment. *See Newton v. State*, No. 10–06–160–CR, 2007 WL 926184 (Tex.App.-Waco Mar.28, 2007) (mem.op.). As authorized by Rule of Appellate Procedure 50, we issue this modified opinion within thirty days after Newton filed his petition for discretionary review. TEX.R.APP. P. 50. On reconsideration of the issues presented, we will reverse and remand.

### Venue

Newton's alleges in his fourth issue that the evidence to support his conviction for indecency with a child is legally insufficient because there is no evidence of venue in Brazos County.

"Unless ... disputed in the trial court, or unless the record affirmatively shows the contrary, the court of appeals must presume ... that venue was proved in the trial court." TEX.R.APP. P. 44.2(c)(1). To dispute proof of venue, the defendant must raise the issue specifically in the trial court. *See* TEX.R.APP. P. 33.1(a); *Etchieson v. State*, 574 S.W.2d 753, 759 (Tex.Crim.App.1978); *Atwood v. State*, 120 S.W.3d 892, 894–95 (Tex.App.-Texarkana 2003, no pet.); *Mosley v. State*, 643 S.W.2d 212, 216 (Tex.App.-Fort Worth 1982, no pet.). For the record to show affirmatively that the State did not prove venue, "the record [must] affirmatively negate[ ] whatever proof was made by the State on the matter of venue." *Holdridge v. State*, 707 S.W.2d 18, 21–22 (Tex.Crim. App.1986). Newton refers to evidence that the abuse began in San Antonio. The State refers to the complainant Jane Doe's testimony that the "sexual abuse" began when Doe moved to San Antonio and continued until she moved to Franklin. Doe lived in San Antonio before moving to Col-

lege Station in Brazos County and then to Franklin in neighboring Robertson County. The State also refers to evidence that Newton "insert[ed] a finger into [Doe's] private area" once in Brazos County.

Newton does not identify any place in the record where he disputed venue in the trial court, nor does he attempt to show that the record affirmatively negates the State's proof of venue or that the record affirmatively shows that mandatory venue lay elsewhere than in Brazos County. Therefore, we presume that the State proved venue in the trial court, and we overrule Newton's fourth issue.

### Outcry Testimony

■ Newton contends in his first issue that the court abused its discretion by admitting outcry testimony.

■ We review a trial court's decision to admit or exclude evidence under an abuse-of-discretion standard. *Oprean v. State,* 201 S.W.3d 724, 726 (Tex.Crim.App. 2006). An abuse of discretion occurs when the court's decision lies outside the "zone of reasonable disagreement." *Id.* (citing *Montgomery v. State,* 810 S.W.2d 372, 391 (Tex.Crim.App.1991) (op. on reh'g)).

■ Article 38.072 of the Code of Criminal Procedure describes the proper outcry witness as "the first person, 18 years of age or older, other than the defendant, to whom the child made a statement about the offense." Tex.Code Crim. Proc. Ann. art. 38.072, § 2(a)(2) (Vernon 2005). The Court of Criminal Appeals has construed this to mean the first adult "to whom the child makes a statement that in some discernible manner describes the alleged offense. [This] statement must be more than words which give a general allusion that something in the area of child abuse was going on." *Garcia v. State,* 792 S.W.2d 88, 91 (Tex.Crim.App.1990); *Han-*

*son v. State,* 180 S.W.3d 726, 729 (Tex. App.-Waco 2005, no pet.). "[A] trial court has broad discretion in determining" the proper outcry witness. *Garcia,* 792 S.W.2d at 92; *Hanson,* 180 S.W.3d at 729; *accord Elder v. State,* 132 S.W.3d 20, 26 (Tex.App.-Fort Worth 2004, pet. ref'd).

The outcry witness, a psychotherapist who treated Doe, testified outside the presence of the jury that her notes for a date certain stated that Doe disclosed "that [Newton] had sexually abused [Doe] in the past."

Newton argues that the witness's "testimony was a general conclusion of abuse that did not describe the act in a discernible manner." Newton concedes that the witness was the first adult to whom Doe made a statement concerning Newton's offenses. Although the witness's testimony indicates that Doe's statement to her did not specify the manner or means by which Newton "sexually abused" her, the statement did clearly allege sexual abuse and clearly identified Newton as the abuser. In view of the broad discretion afforded trial courts in the determination of who is a proper outcry witness, we cannot say that the court's decision lies outside the "zone of reasonable disagreement." *See Savedra v. State,* No. 03–99–00590–CR, 2000 WL 1706992, at *2 (Tex.App.-Austin Nov.16, 2000, pet. ref'd) (not designated for publication). Accordingly, we overrule Newton's first issue.

### Rule of Evidence 404(b)

■ Newton contends in his second issue that the court abused its discretion by admitting evidence of an extraneous offense under Rule 404(b). The State responds that the complained-of evidence was admissible to rebut Newton's defensive theory that the complainant had fabricated the allegations against him.

The abuse-of-discretion standard we previously referenced likewise applies when reviewing a trial court's decision to admit extraneous-offense evidence under Rule 404(b). *Page v. State,* 137 S.W.3d 75, 78 (Tex.Crim.App.2004); *Moses v. State,* 105 S.W.3d 622, 626–27 (Tex.Crim.App. 2003).

The complainant Doe is the daughter of Newton's former wife. Doe testified that Newton first sexually abused her when she was ten and awoke to find Newton touching her vagina. She said that he touched her in a similar manner "a couple of [other] times." When she was around twelve, she awoke to find Newton inserting his finger in her vagina. There were no other witnesses to these assaults. According to Doe, Newton did not say anything during the assaults, and he never threatened her or told her not to tell anyone.

The extraneous-offense evidence came from L.D., Newton's former stepdaughter from a marriage before Newton's marriage to Doe's mother.[1] L.D. testified that Newton molested her over a seven-year period during the 1980's (about twenty-five years before the trial). Her first memory was Newton forcing her to perform oral sex on him when she was nine or ten. Another specific memory L.D. had was of Newton engaging in sexual intercourse with someone else (whom L.D. could not identify) and forcing L.D. to sit behind him and rub his scrotum. She could not remember how many times Newton molested her, nor could she recall if he said anything during these sexual assaults.

On cross-examination, L.D. testified that Newton also had penetrated her vagina with his penis. When she was in seventh grade, she told her mother about Newton's sexual abuse, but her mother did not believe her. The next year, she told a teach-

er, and the school notified Child Protective Services, which investigated the allegations. According to L.D., she recanted because her mother pressured her to do so.

A few years after L.D.'s mother and Newton divorced, L.D. married. Her husband and she worked with Newton at a donut shop. L.D. testified that she later wrote Newton a letter that basically said, "Blake, I heard you got married, heard you got kids. Don't do this to them." According to L.D., the letter went into enough detail to make it clear that Newton had sexually assaulted her. As a result of the letter, Doe's mother called L.D. to discuss the letter's contents.

L.D. started therapy in 2003, about three years before trial, because she had begun cutting herself. She was diagnosed with bipolar disorder, severe depression, and anxiety. She attempted suicide when she first started therapy.

At the end of L.D.'s testimony, the trial court gave the jury an oral instruction limiting their consideration of L.D.'s testimony solely to "rebut the defensive theory of fabrication in connection with the offense alleged in the indictment before you in this cause and for no other purpose."

■■■ "Rule 404(b) allows evidence of other crimes, wrongs, or acts *if the evidence has relevance apart from character conformity.*" *Moses,* 105 S.W.3d at 626 (emphasis added). Rebuttal of a defensive theory is one of the permissible purposes for which evidence may be admitted under Rule 404(b). *See Casey v. State,* 215 S.W.3d 870, 880–82 (Tex.Crim.App.2007); *Moses,* 105 S.W.3d at 626; *Ransom v. State,* 920 S.W.2d 288, 301 (Tex.Crim.App. 1996) (op. on reh'g). In determining whether extraneous-offense evidence is ad-

---

1. L.D. was 35 years old at the time of trial.

missible to rebut a defensive theory, a trial court can consider a defensive theory raised by defense counsel in an opening statement. *See Powell v. State*, 63 S.W.3d 435, 438–39 (Tex.Crim.App.2001); *Bass v. State*, 222 S.W.3d 571, 574 (Tex.App.-Houston [14th Dist.] 2007, pet. filed). Extraneous-offense evidence is also admissible to rebut a defensive theory raised during cross-examination of a State's witness. *See Ransom*, 920 S.W.2d at 301; *Bass*, 222 S.W.3d at 574; *Swarb v. State*, 125 S.W.3d 672, 683 (Tex.App.-Houston [1st Dist.] 2003, pet. dism'd).

The introduction of extraneous-offense evidence for a purpose other than character conformity, such as to rebut a defensive theory, does not by itself make the evidence admissible. *Webb v. State*, 36 S.W.3d 164, 180–81 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd) (en banc) (citing *Rankin v. State*, 974 S.W.2d 707, 709 (Tex.Crim.App.1998)). The extraneous-offense evidence must also be relevant to a "fact of consequence" in the case. *Id.* (citing *Rankin*, 974 S.W.2d at 709; *Owens v. State*, 827 S.W.2d 911, 914 (Tex.Crim.App.1992)); *see also* Tex.R. Evid. 401 (" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.").

Newton contends that he did not raise fabrication as a defensive theory. The State disagrees, arguing that Newton raised the theory that Doe fabricated her allegations, either out of ill will toward Newton or at her mother's prompting, in his examination of the venire panel during jury selection, in cross-examination of the State's witnesses, and in closing argument.

The State refers in particular to Newton's cross-examination of Doe. Although much of that cross-examination involved general impeachment of Doe with prior inconsistent statements, some of the cross-examination did tend to raise the fabrication theory. For example, Newton brought out that Doe hated and had no respect for Newton, disliked that he was "bossy," resented that he came between her mother and her, felt better when she moved away from him, and first alleged that he sexually abused her only after she had learned that her mother might reconcile with him.

The State also refers to Newton's voir-dire examination, in which he asked:

> Do you think that someone is—when I say a 'child' in their teens—do you think someone in their teens is able to make up a story that's not true? Does everybody agree with that?

> Do you think that—we talked about— [the State] talked about the reason why people don't make outcries is because they're scared to say something about it. I forgot who said something, but they basically said that a child can be manipulated not to tell what has happened by an adult.

> The adult has told them either by force or, you know, 'This will happen to you if you say this.' But do you think the converse of that, do you think that basically an adult can manipulate a child to say something? When I say 'child'— again, teenagers. Does everybody agree with that?

Finally, the State refers to Newton's closing argument. There, Newton suggested that Doe fabricated the allegation against Newton to prevent her mother's reconciliation with Newton, or that she did so at the prompting of her mother (as Doe made her allegation immediately before her mother filed for divorce from Newton) or at the prompting of her first therapist.

From our review of the record, we agree with the State that Newton raised the issue of fabrication as a defensive theory. *See Bass*, 222 S.W.3d at 576.

In *Bass*, the Fourteenth Court of Appeals addressed whether extraneous offenses are admissible to rebut the defensive theory of fabrication.[2]

> Appellant argues the extraneous offenses were inadmissible under Texas Rule of Evidence 404(b) because they were offered solely to establish character conformity. Specifically, appellant contends extraneous offenses are not admissible to rebut a fabrication defense and cites our decision in *Webb v. State*, 36 S.W.3d 164, 180–81 (Tex.App.-Houston [14th Dist.] 2000, pet. [ref'd]) (en banc). We agree with appellant.

*Id.*, 222 S.W.3d at 575.

A fabrication defense theory is one "in which the defendant contends the allegations are entirely made up." *Id.*, 222 S.W.3d at 576. The *Bass* court relied heavily on its en banc decision in *Webb:*

> In *Webb*, the fact issue in dispute was whether the defendant committed aggravated sexual assault of the complainant, a topless dancer. At trial, the State presented testimony from another topless dancer, who had also been sexually assaulted by the defendant in a similar manner. The trial court ruled extraneous-offense evidence was admissible because it was a "signature type" offense that showed " 'opportunity, plan, maybe motive, scheme. . . .' " However, we noted there was no dispute as to identity, motive, intent or any of the other Rule 404(b) exceptions. The State contended the extraneous-offense evidence was offered for the purpose of

challenging a defensive theory raised during cross-examination of the complainant that she was mistaken or unsure about the events due to her level of intoxication. However, we explained that evidence of an extraneous offense against the other topless dancer "could not assist the jury in its determination of whether the appellant sexually assaulted [the complainant] except by showing character conformity in violation of rule 404(b)." Otherwise, any time a cross-examination challenged the complainant's credibility or recall, extraneous offenses would always be allowed in-totally eviscerating Rule 404(b) and the policies underlying the prohibition against the admission of such evidence.

*Id.*, 222 S.W.3d at 574 (citing *Webb*, 36 S.W.3d at 180–81 & n. 9).

Next, the *Bass* court explained why several Court of Criminal Appeals cases decided after *Webb* do not support the State's contention that extraneous offenses are admissible to rebut a fabrication defense theory. *See id.*, 2007 WL 703761, at 576 – 577 (citing *Moses v. State*, 105 S.W.3d 622 (Tex.Crim.App.2003); *Wheeler v. State*, 67 S.W.3d 879 (Tex.Crim.App. 2002); *Powell v. State*, 63 S.W.3d 435 (Tex. Crim.App.2001)).

We agree with *Bass* and its rationale. Extraneous-offense evidence is not admissible to rebut a fabrication defense. In this case, the ultimate fact of consequence in dispute is whether Newton committed the offenses of indecency by sexual contact and aggravated sexual assault against Doe. The evidence of Newton's 25–year–old extraneous offenses with L.D. could not assist the jury in its determination of whether Newton committed the charged offenses against Doe, other than

---

**2.** After the briefs were filed and this case was submitted, Newton filed a letter brief attaching a copy of *Bass* and setting out its holding. The State did not reply to Newton's letter brief.

to show character conformity in violation of Rule 404(b). *See id.*, 222 S.W.3d at 575; *Webb*, 36 S.W.3d at 180–81. Thus, the court abused its discretion by admitting the extraneous-offense evidence pertaining to L.D.

## Harm Analysis

We must now determine whether this error affected Newton's substantial rights. *See* TEX.R.APP. P. 44.2(b). We "consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case." *Motilla v. State*, 78 S.W.3d 352, 355 (Tex.Crim.App.2002); *Shook v. State*, 172 S.W.3d 36, 41 (Tex. App.-Waco 2005, no pet.); *accord Geuder v. State*, 142 S.W.3d 372, 376 (Tex.App.-Houston [14th Dist.] 2004, pet. ref'd). We may also consider the jury instructions, the State's theory of the case, any defensive theories, closing arguments, voir dire, and the extent to which the State emphasized the erroneously admitted evidence. *See Motilla*, 78 S.W.3d at 355–56; *Shook*, 172 S.W.3d at 41; *Geuder*, 142 S.W.3d at 376.

In this analysis, we decide whether "the error had a substantial and injurious effect or influence in determining the jury's verdict." *Haley v. State*, 173 S.W.3d 510, 518 (Tex.Crim.App.2005). If we have " 'a grave doubt' that the result [of the underlying proceeding] was free from the substantial influence of the error, then [we] must treat the error as if it [had a substantial influence on the outcome]." *Burnett v. State*, 88 S.W.3d 633, 637 (Tex.Crim.App. 2002). Stated another way, "in cases of grave doubt as to harmlessness the petitioner must win." *Id.* at 638 (quoting *O'Neal v. McAninch*, 513 U.S. 432, 437, 115 S.Ct. 992, 995, 130 L.Ed.2d 947 (1995)).

L.D. gave extensive testimony about her life, her emotional problems, and Newton's alleged sexual assaults against her. Her testimony consumes nearly as many pages of the reporter's record as Doe's.[3] The evidence of guilt cannot be characterized as overwhelming.[4] The State placed great emphasis on L.D.'s testimony in closing argument.

L.D.'s testimony significantly bolstered the State's case and prejudiced Newton. *See Abdnor v. State*, 871 S.W.2d 726, 738 (Tex.Crim.App.1994) ("The admission of extraneous offenses also prejudices the defendant because of the jury's natural inclination to infer guilt to the charged offense from the extraneous offenses."). Although the jury could have viewed Doe's testimony as credible by itself, L.D.'s damaging testimony almost certainly played a significant role in Newton's conviction. *See Webb*, 36 S.W.3d at 183; *see also Bass*, 222 S.W.3d at 578; *cf. Martinez v. State*, 188 S.W.3d 291, 293–94 (Tex.App.-Waco 2006, pet. ref'd) (erroneous admission of outcry testimony had more than slight influence on verdict in indecency with child case and was harmful). And the State's emphasis on the extraneous offenses in closing argu-

3. The State suggests that only 10 pages of L.D.'s direct examination should be considered in determining the amount of trial time devoted to this extraneous-offense evidence. However, because the State's only purpose for calling L.D. as a witness was for the admission of the extraneous-offense evidence, we conclude that the entirety of L.D.'s testimony (62 pages) must be included in this calculation.

4. The State says as much in its brief when it states that it "had a strong need to refute" the defensive theory of fabrication with the extraneous-offense evidence because "[t]here was no physical evidence or eyewitnesses."

ment augmented the harm to Newton. *See Booker v. State*, 103 S.W.3d 521, 538–39 (Tex.App.-Fort Worth 2003, pet. ref'd); *see also Reese v. State*, 33 S.W.3d 238, 244 (Tex.Crim.App.2000) (noting in harm analysis that State's emphasis on erroneously admitted evidence during argument "sent the jury into deliberations thinking about" that evidence). Thus, we conclude that the erroneous admission of the extraneous offenses involving L.D. was harmful because it had a substantial and injurious effect on the jury's verdict.

Accordingly, we sustain Newton's second issue. Having sustained the second issue, we need not address his third issue.

## Conclusion

We reverse the judgment and remand this cause to the trial court for further proceedings consistent with this opinion. The opinion and judgment dated March 28, 2007 are withdrawn, and Newton's petition for discretionary review is dismissed by operation of law. *See* TEX.R.APP. P. 50.

Chief Justice GRAY dissenting.[5]

TOM GRAY, Chief Justice, dissenting on petition for discretionary review.

As of April 30, 2007, the statewide average number of cases pending per intermediate appellate court justice was 99.2 cases.

Justice Reyna had 148 pending cases as of May 31, 2007, down from 153 cases pending at the end of April. This is 43 pending cases more than Justice Vance, the justice on this Court with the next most pending cases. The problem is that a majority of this Court has developed a pattern of processing the same proceeding multiple times, some by choice and some by having been reversed by a higher court and the proceeding remanded for further review. *E.g., City of Waco v. Kelley*, No. 10–03–00214–CV, 2004 Tex.App. LEXIS 9828, 2004 WL 2481383 (Tex.App.—Waco Oct. 29, 2004) (mem.op.) (Reyna, J.), *rev'd*, 197 S.W.3d 324 (Tex.2006) (per curiam), *on remand*, 226 S.W.3d 672 (Tex.App.—Waco, 2007, no pet. h.) (Reyna, J.); *Pena v. State*, 166 S.W.3d 274 (Tex.App.—Waco 2005) (Reyna, J.), *vacated*, 191 S.W.3d 133 (Tex. Crim.App.2006), *on remand*, 226 S.W.3d 634 (Tex.App.—Waco, 2007, no pet. h.) (Reyna, J.).

To keep up with our work, it is critical that we process each proceeding only one time. But we have issued an opinion in this proceeding before. *See Newton v. State*, No. 10–06–00160–CR, 2007 Tex.App. LEXIS 2477, 2007 WL 926184 (Tex.App.—Waco Mar. 28, 2007, pet. dism'd) (mem. op.). And the prior memorandum opinion was unanimous in the decision to affirm the conviction.[1] If the majority thought

---

**5.** In reading the dissenting opinion's prefatory comments, we are reminded of the recent observation of the Court of Criminal Appeals:

> First, the statement[s] [are] unnecessary; [they] contribute[ ] nothing to the legal issue before us. Second, and most importantly, [they are] highly unprofessional. When a judge chastises other members of the judiciary in this manner, it not only reflects poorly on the judge, it undermines the integrity of the justice system. The words of Supreme Court Justice Kennedy are particularly appropriate here:
>
> The collegiality of the judiciary can be destroyed if we adopt the habits and manner-

isms of modern, fractious discourse. Neither in public nor in private must we show disrespect for our fellow judges. Whatever our failings, we embody the law and its authority. Disrespect for the person leads to disrespect for the cause.

> If public respect for the judiciary is to be maintained, it must begin from within.

*Ex parte Olivares*, 202 S.W.3d 771, 773 (Tex. Crim.App.2006) (quoting Anthony M. Kennedy, *Judicial Ethics and the Rule of Law*, 40 St. Louis U. L.J. 1067, 1072 (1996)).

**1.** Justice Vance would have addressed one particular argument raised by Newton that

that result was wrong, why did the majority not just rewrite the opinion and judgment rather than voting to grant a motion to publish that prior memorandum opinion? *See Newton v. State*, 281 S.W.3d 450 (Tex.App.—Waco May 9, 2007, order).

Instead the majority waited to prepare its new opinion until we were put under the thirty-day deadline of Rule 50 after a petition for discretionary review was filed, a time in which the State does not have the opportunity to provide additional briefing nor do I have adequate time to conduct additional research. *See* TEX. R. APP. P. 50. In that new opinion the majority now reverses the conviction. The majority

must have something larger at work here than just getting to what the majority believes is the correct judgment, because there is no issue raised in the petition for discretionary review that had not already been presented to us.

But the result of whatever is at work is sub-standard based upon the history of the review of this Court's work product by the higher courts. This is the most reversed court in the State. Based on the number of this Court's decisions which have been reversed, this calendar year does not look good.[2] And reversals in the last full calendar year made it an extraordinarily bad year.[3] It is of little solace to me that in

was not specifically discussed in the prior memorandum opinion.

**2.** *See, e.g., Sonnichsen v. Baylor Univ.*, No. 10–02–00125–CV, 2004 Tex.App. LEXIS 7774, 2004 WL 1903418 (Tex.App.—Waco Aug. 25, 2004) (mem.op.) (Reyna, J.), *rev'd & judgm't rendered*, 221 S.W.3d 632 (Tex., 2007) (per curiam); *Coley v. Baylor Univ.*, 147 S.W.3d 567 (Tex.App.—Waco 2004) (Reyna, J.), *rev'd & judgm't rendered*, 221 S.W.3d 599 (Tex. 2007); *In re Guardianship of Keller*, 171 S.W.3d 498 (Tex.App.—Waco 2005) (Reyna, J.), *rev'd sub nom. Zipp v. Wuemling*, 218 S.W.3d 71 (Tex.2007) (per curiam); *State Farm Life Ins. Co. v. Martinez*, 174 S.W.3d 772 (Tex.App.—Waco 2005) (Vance, J.), *rev'd*, 216 S.W.3d 799 (Tex.2007); *Wachovia Bank of Del., N.A. v. Gilliam*, No. 10–04–00038–CV, 2005 Tex.App. LEXIS 5039, 2005 WL 1531293 (Tex.App.—Waco June 29, 2005 (mem.op.) (Reyna, J.), *rev'd & judgm't vacated*, 215 S.W.3d 848 (Tex.2007) (per curiam); *Archie v. State*, 181 S.W.3d 428 (Tex.App.—Waco 2005) (Reyna, J.), *rev'd*, 221 S.W.3d 695 (Tex.Crim.App., 2007); *Hooper v. State*, 170 S.W.3d 736 (Tex.App.—Waco 2005) (Vance, J.), *remanded*, 214 S.W.3d 9 (Tex.Crim.App. 2007); *Griggs v. State*, 167 S.W.3d 74 (Tex. App.—Waco 2005) (Vance, J.), *rev'd*, 213 S.W.3d 923 (Tex.Crim.App.2007).

**3.** *See*, in criminal cases, *e.g., Westerman v. State*, No. 10–04–00292–CR, 2005 Tex.App. LEXIS 4842, 2005 WL 1484056 (Tex.App.—Waco June 22, 2005) (not designated for publication) (mem.op.) (Reyna, J.), *rev'd*, No. PD–1314–05, 2006 WL 2694388 (Tex.Crim.

App. Sept.20, 2006) (not designated for publication); *Meza v. State*, No. 10–05–00037–CR, 2005 Tex.App. LEXIS 5566, 2005 WL 1654761 (Tex.App.—Waco July 13, 2005) (mem.op.) (not designated for publication) (Gray, C.J.), *remanded*, 206 S.W.3d 684 (Tex. Crim.App.2006) (sua-sponte discretionary review); *Kniatt v. State*, 157 S.W.3d 83 (Tex. App.—Waco 2005) (Vance, J.), *rev'd*, 206 S.W.3d 657 (Tex.Crim.App.2006), *cert. denied*, 549 U.S. 1052, 127 S.Ct. 667, 166 L.Ed.2d 514 (2006); *Olivas v. State*, 153 S.W.3d 108 (Tex.App.—Waco 2004) (Vance, J.) (3 cases), *rev'd*, 202 S.W.3d 137 (Tex.Crim.App.2006); *Olivas v. State*, No. 10–02–00311–CR, 2004 Tex.App. LEXIS 10131, 2004 WL 2566607 (Tex.App.—Waco Nov. 10, 2004) (not designated for publication) (mem.op.) (Gray, C.J.), *rev'd*, 203 S.W.3d 341 (Tex.Crim.App.2006); *Watson v. State*, 160 S.W.3d 627 (Tex.App.—Waco 2005) (Reyna, J.), *rev'd*, 204 S.W.3d 404 (Tex.Crim.App.2006); *Herring v. State*, 160 S.W.3d 618 (Tex.App.—Waco 2005) (mem. op.) (Reyna, J.), *rev'd*, 202 S.W.3d 764 (Tex. Crim.App.2006), *cert. denied*, 550 U.S. 909, 127 S.Ct. 2107, 167 L.Ed.2d 822 (2007); *State v. Stanley*, 171 S.W.3d 516 (Tex.App.—Waco 2005) (per curiam), *rev'd*, 201 S.W.3d 754 (Tex.Crim.App.2006); *State v. Adams*, No. 10–05–00102–CR, 2005 Tex.App. LEXIS 5971, 2005 WL 1788254 (Tex.App.—Waco July 27, 2005) (not designated for publication) (mem. op.) (per curiam), *rev'd, Stanley*, 201 S.W.3d 754; *State v. Rodriguez*, No. 10–05–00103–CR, 2005 Tex.App. LEXIS 5914, 2005 WL 1788680 (Tex.App.—Waco July 27, 2005) (not designated for publication) (mem.op.) (per cu-

most of these reversals I had dissented to

riam), *rev'd, Stanley*, 201 S.W.3d 754; *State v. Wachsmann*, No. 10–05–00104–CR, 2005 Tex. App. LEXIS 5915, 2005 WL 1788783 (Tex. App.—Waco July 27, 2005) (not designated for publication) (mem.op.) (per curiam), *rev'd, Stanley*, 201 S.W.3d 754; *State v. Juntunen*, No. 10–05–00105–CR, 2005 Tex.App. LEXIS 5940, 2005 WL 1788885 (Tex.App.—Waco July 27, 2005) (not designated for publication) (mem.op.) (per curiam), *rev'd, Stanley*, 201 S.W.3d 754; *State v. Carpenter*, No. 10–05–00106–CR, 2005 Tex.App. LEXIS 5936, 2005 WL 1788898 (Tex.App.—Waco July 27, 2005) (not designated for publication) (mem.op.) (per curiam), *rev'd, Stanley*, 201 S.W.3d 754; *State v. Rodgers*, No. 10–05–00107–CR, 2005 Tex.App. LEXIS 5913, 2005 WL 1789229 (Tex.App.—Waco July 27, 2005) (not designated for publication) (mem.op.) (per curiam), *rev'd, Stanley*, 201 S.W.3d 754; *State v. Boutin*, No. 10–05–00108–CR, 2005 Tex.App. LEXIS 5920, 2005 WL 1789369 (Tex.App.—Waco July 27, 2005) (not designated for publication) (mem.op.) (per curiam), *rev'd, Stanley*, 201 S.W.3d 754; *State v. Holmes*, No. 10–05–00109–CR, 2005 Tex.App. LEXIS 5928, 2005 WL 1789622 (Tex.App.—Waco July 27, 2005) (not designated for publication) (mem.op.) (per curiam), *rev'd, Stanley*, 201 S.W.3d 754; *State v. Garcia*, No. 10–05–00110–CR, 2005 Tex.App. LEXIS 5919, 2005 WL 1789784 (Tex.App.—Waco July 27, 2005) (not designated for publication) (mem.op.) (per curiam), *rev'd, Stanley*, 201 S.W.3d 754; *State v. Telles*, No. 10–05–00111–CR, 2005 Tex.App. LEXIS 5939, 2005 WL 1789995 (Tex.App.—Waco July 27, 2005) (not designated for publication) (mem.op.) (per curiam), *rev'd, Stanley*, 201 S.W.3d 754; *State v. Leftwich*, No. 10–05–00112–CR, 2005 Tex.App. LEXIS 5946, 2005 WL 1790122 (Tex.App.—Waco July 27, 2005) (not designated for publication) (mem.op.) (per curiam), *rev'd, Stanley*, 201 S.W.3d 754; *State v. Collier*, No. 10–05–00113–CR, 2005 Tex.App. LEXIS 5917, 2005 WL 1790126 (Tex.App.—Waco July 27, 2005) (not designated for publication) (mem.op.) (per curiam), *rev'd, Stanley*, 201 S.W.3d 754; *State v. Dobbs*, No. 10–05–00114–CR, 2005 Tex.App. LEXIS 5938, 2005 WL 1790136 (Tex.App.—Waco July 27, 2005) (not designated for publication) (mem.op.) (per curiam), *rev'd, Stanley*, 201 S.W.3d 754; *State v. Bagby*, No. 10–05–00115–CR, 2005 Tex.App. LEXIS 5918, 2005 WL 1790665 (Tex.App.—Waco July 27, 2005) (not designated for publication) (mem.op.) (per curiam), *rev'd, Stanley*, 201 S.W.3d 754; *State v. Unger*, No. 10–05–00116–CR, 2005 Tex.App. LEXIS 5942, 2005 WL 1790923 (Tex.App.—Waco July 27, 2005) (not designated for publication) (mem.op.) (per curiam), *rev'd, Stanley*, 201 S.W.3d 754; *State v. Eby*, No. 10–05–00117–CR, 2005 Tex.App. LEXIS 5916, 2005 WL 1790986 (Tex.App.—Waco July 27, 2005) (not designated for publication) (mem.op.) (per curiam), *rev'd, Stanley*, 201 S.W.3d 754; *Cocke v. State*, 170 S.W.3d 747 (Tex.App.—Waco 2005) (Reyna, J.), *rev'd*, 201 S.W.3d 744 (Tex.Crim.App.2006), *cert. denied*, 549 U.S. 1287, 127 S.Ct. 1832, 167 L.Ed.2d 332 (2007); *Montanez v. State*, 143 S.W.3d 344 (Tex.App.—Waco 2004) (Vance, J.), *rev'd*, 195 S.W.3d 101 (Tex.Crim.App.2006); *Pena*, 166 S.W.3d 274, *vacated*, 191 S.W.3d 133; *Powell v. State*, 151 S.W.3d 646 (Tex.App.—Waco 2004) (Reyna, J .), *rev'd*, 189 S.W.3d 285 (Tex.Crim.App.2006); *Robertson v. State*, No. 10–03–00265–CR, 2004 Tex.App. LEXIS 10130, 2004 WL 2567186 (Tex.App.—Waco Nov. 10, 2004) (not designated for publication) (mem.op.) (Vance, J.), *rev'd*, 187 S.W.3d 475 (Tex.Crim.App.2006). *See also*, in the Texas Supreme Court, *e.g.*, *Norris v. State Farm Mut. Auto. Ins. Co.*, 217 S.W.3d 1 (Tex.App.—Waco 2004) (mem.op.) (Vance, J.), *rev'd*, 216 S.W.3d 819 (2006); *Texas Dep't of Pub. Safety v. Alford*, 154 S.W.3d 133 (Tex.App.—Waco 2004) (Vance, J.), *rev'd*, 209 S.W.3d 101 (Tex.2006) (per curiam); *Kelley*, 2004 Tex.App. LEXIS 9828, 2004 WL 2481383 *rev'd*, 197 S.W.3d 324; *Univ. of Tex. Med. Branch v. Estate of Blackmon*, 169 S.W.3d 712 (Tex.App.—Waco 2005) (Vance, J.), *vacated*, 195 S.W.3d 98 (Tex.2006) (per curiam); *Scott v. Citizen's Nat'l Bank*, No. 10–03–00322–CV, 2005 Tex.App. LEXIS 2587, 2005 WL 762585 (Tex.App.—Waco Mar. 30, 2005) (Vance, J.), *rev'd sub nom. Citizens Nat'l Bank v. Scott*, 195 S.W.3d 94 (Tex.2006) (per curiam); *Langley v. Jernigan*, No. 10–00–00373–CV, 2005 Tex.App. LEXIS 1687, 2005 WL 486759 (Tex.App.—Waco Mar. 2, 2005) (mem.op.) (Vance, J.), *rev'd*, 195 S.W.3d 91 (Tex.2006) (per curiam); *Kiefer v. Touris*, No. 10–03–00331–CV, 2005 Tex.App. LEXIS 5079, 2005 WL 1531063 (Tex.App.—Waco June 29, 2005)@ (mem.op.) (Vance, J.), *rev'd*, 197 S.W.3d 300 (Tex.2006) (per curiam); *Elwood v. Kroger Co.*, No. 10–02–00349–CV, 2004 Tex.App. LEXIS 10119, 2004 WL 2567069 (Tex.App.—Waco Nov.10, 2004) (mem.op.) (Vance, J.), *rev'd*, 197 S.W.3d 793 (Tex.2006) (per curiam); *Lingafelter v. Shupe*, 154 S.W.3d 233 (Tex.App.—Waco 2005) (Vance, J.), *rev'd*, 192 S.W.3d 577 (Tex.2006) (per curiam).

the majority's opinion and judgment. And again I must dissent.

I attach as an appendix the body of this Court's memorandum opinion of March 28, 2007, which the majority ordered published on May 9, 2007, but now withdraws. I adopt that memorandum opinion as my dissenting opinion. Because the majority withdraws our prior opinion affirming Newton's conviction, and issues a new opinion and judgment which now reverse Newton's conviction for the aggravated sexual assault of a child, I respectfully dissent.

## APPENDIX

Newton appeals his convictions for aggravated sexual assault of a child, and for indecency with a child by sexual contact, against the victim named in the indictment as Jane Doe, the daughter of Newton's former wife. *See* Act of May 28, 1997, 75th Leg., R.S., ch. 1286, § 1, 1997 Tex. Gen. Laws 4911, 4911 (amended 1999) (current version at TEX. PENAL CODE ANN. § 22.021(a) (Vernon Supp.2006)); Act of May 29, 1993, 73d Leg., R.S., ch. 900, art. 1, § 1.01, sec. 21.11(a), 1993 Tex. Gen. Laws 3586, 3616 (amended 2001) (current version at TEX. PENAL CODE ANN. § 21.11(a) (Vernon 2003)). We affirm.

VENUE. In Newton's fourth issue, he contends that the evidence of indecency with a child was legally insufficient. Specifically, Newton argues that there was no evidence of venue in Brazos County.

"Unless ... disputed in the trial court, or unless the record affirmatively shows the contrary, the court of appeals must presume ... that venue was proved in the trial court." TEX. R. APP. P. 44.2(c); *see id.* 33.1(a); *Henley v. State*, 98 S.W.3d 732,

734 (Tex.App.—Waco 2003, pet. ref'd). In order to dispute proof of venue, the defendant must raise the issue specifically in the trial court. *See* TEX. R. APP. P. 33.1(a); *Etchieson v. State*, 574 S.W.2d 753, 759 (Tex.Crim.App.1978); *Bass v. State*, 464 S.W.2d 668, 669 (Tex.Crim.App.1971); *Romay v. State*, 442 S.W.2d 399, 400 (Tex. Crim.App.1969); *Martin v. State*, 385 S.W.2d 260, 261 (Tex.Crim.App.1964) (op. on orig. submission); *Atwood v. State*, 120 S.W.3d 892, 894–95 (Tex.App.—Texarkana 2003, no pet.); *Mosley v. State*, 643 S.W.2d 212, 216 (Tex.App.—Fort Worth 1982, no pet.); *see Henley* at 734. In order for the record to show affirmatively that the State did not prove venue, "the record [must] affirmatively negate[ ] whatever proof was made by the State on the matter of venue." *Holdridge v. State*, 707 S.W.2d 18, 21–22 (Tex.Crim.App.1986); *see Holdridge v. State*, 684 S.W.2d 766, 767 (Tex.App.— Waco 1984) (only "affirmative and conclusive proof in the record that the venue of prosecution was improperly laid" avoids presumption), *aff'd, Holdridge*, 707 S.W.2d 18.

Newton points to evidence that the abuse began in San Antonio. The State points to Doe's testimony that Newton's "sexual abuse" of Doe began when Doe moved to San Antonio and continued until she moved to Franklin. (Br. at 50 (quoting 3 R.R. at 132).) Doe moved to San Antonio before moving to College Station in Brazos County, and then to Franklin. The State also points to evidence that Newton "insert[ed] a finger into [Doe's] private area" once in Brazos County. (*Id.* (quoting 3 R.R. at 170).) The indictment alleged that Newton committed indecency with a child by "engag[ing] in sexual contact by touching the genitals of Jane Doe." [1] (I C.R. at 1.)

---

1. The indictment alleged that Newton committed aggravated sexual assault by

"caus[ing] the penetration of the female sexual organ of Jane Doe ... by inserting his

Newton does not point in the record to any dispute of venue in the trial court, nor does he attempt to show that the record affirmatively negates the State's proof of venue or that the record affirmatively shows that mandatory venue lay elsewhere than in Brazos County. We presume that the State proved venue in the trial court. We overrule Newton's fourth issue.

EVIDENCE. In Newton's first three issues, he complains concerning the trial court's overruling of Newton's objections to evidence.

"An appellate court reviews a trial court's decision to admit or exclude evidence under an abuse of discretion standard." *Shuffield v. State*, 189 S.W.3d 782, 793 (Tex.Crim.App.), *cert. denied*, 549 U.S. 1056, 127 S.Ct. 664, 166 L.Ed.2d 521 (2006); *accord Rachal v. State*, 917 S.W.2d 799, 816 (Tex.Crim.App.1996); *Montgomery v. State*, 810 S.W.2d 372, 387–88 (Tex. Crim.App.1991) (op. on reh'g). "If the trial court's decision was within the bounds of reasonable disagreement, the appellate court should not disturb its ruling." *Shuffield* at 793 (citing *Rachal* at 816); *accord Montgomery* at 390–92 (op. on reh'g).

HEARSAY. In Newton's first issue, he contends that the trial court erred in overruling Newton's hearsay objection to outcry evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072 (Vernon 2005); TEX. R. EVID. 801(d), 802. Texas Code of Criminal Procedure Article 38.072 "makes an 'outcry' exception to the hearsay rule for the first report of sexual abuse that [a] child" victim "makes to an adult." *In re Z.L.B.*, 102 S.W.3d 120, 121 (Tex. 2003) (juvenile adjudication); *accord Thomas v. State*, 1 S.W.3d 138, 140 (Tex.

App.—Texarkana 1999, pet. ref'd); *see Holland v. State*, 802 S.W.2d 696, 699 (Tex. Crim.App.1991). "When offered for the truth of the matters asserted, so called 'outcry testimony' is hearsay; as such, it is objectionable unless the testimony is permitted by a prescribed exception to the hearsay rule." *Dorado v. State*, 843 S.W.2d 37, 38 (Tex.Crim.App.1992); *see Martinez v. State*, 178 S.W.3d 806, 810–811 (Tex.Crim.App.2005).

In prosecutions for certain offenses, however, including prosecutions for sexual offenses under Texas Penal Code Chapter 21 committed against child victims twelve years of age or younger, subject to procedural requirements, the victim's outcry "statements that describe the alleged offense" are "not inadmissible because of the hearsay rule" if the statements "were made to the first person, 18 years of age or older, other than the defendant, to whom the child made a statement about the offense." TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(a), (b), § 2(a)(2); *see id.* § 1. Article 38.072 "strik[es] a balance between the general prohibition against hearsay and the specific societal desire to curb the sexual abuse of children." *Garcia v. State*, 792 S.W.2d 88, 91 (Tex.Crim. App.1990) (citing *Osborne v. Ohio*, 495 U.S. 103, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990)). The statute's purpose is to "admit the testimony of the first adult a child confides in regarding the abuse." *Martinez*, 178 S.W.3d at 811. Otherwise, "the people whom these children trust and in whom they have confided ... are barred from repeating what they have been told ...." *Id.* n. 15 (quoting HOUSE COMM. ON CRIM. JURISPRUDENCE, BILL

---

finger." (I C.R. at 1.) Newton does not contend that indecency with a child constitutes a lesser included offense of aggravated sexual assault of a child under those facts. *Cf.*

*Ochoa v. State*, 982 S.W.2d 904, 908 (Tex. Crim.App.1998); *Murray v. State*, 24 S.W.3d 881, 889 (Tex.App.—Waco 2000, pet. ref'd).

ANALYSIS, Tex. H.B. 579, 69th Leg., R.S. (1985)).

"But the societal interest in curbing child abuse would hardly be served if all that 'first person' had to testify to was a general allegation from the child that something in the area of child abuse was going on at the home." *Garcia*, 792 S.W.2d at 91. In the context, then, of determining which witness, as the "first person ... to whom the child made a statement about the offense" committed by the defendant was the proper outcry witness, Article 38.072 "demands more than a general allusion of sexual abuse"; that is, the statutory language "statement about the offense" does not "mean[] that any statement that arguably relates to what later evolves into an allegation of child abuse against a particular person will satisfy the requirements of" the statute. *Id.* (citing TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(a)(2)) (complainant testified that she told her teacher "what happened"); *see Villanueva v. State*, 209 S.W.3d 239, 247 (Tex.App.—Waco 2006, no pet.); *Hanson v. State*, 180 S.W.3d 726, 727 (Tex.App.—Waco 2005, no pet.). A "statement about the offense" means "a statement that in some discernible manner describes the alleged offense." *Garcia* at 91 (interpreting TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(a)(2)).

"We review the trial court's decision to admit or exclude a hearsay statement that may fall within the article 38.072 hearsay exception under an abuse of discretion standard." *Klein v. State*, 191 S.W.3d 766, 779 (Tex.App.—Fort Worth 2006, pet. granted on other grounds); *accord Villanueva*, 209 S.W.3d at 247; *see Garcia*, 792 S.W.2d at 91.

The outcry witness, a psychotherapist who treated Doe, testified outside the presence of the jury that her notes for a date certain stated that Doe disclosed "that [Newton] had sexually abused [Doe] in the past." (3 R.R. at 6, 7; *see id.* at 5–7.)

Newton argues that the witness's "testimony was a general conclusion of abuse that did not describe the act in a discernible manner." (Br. at 5); *see Garcia*, 792 S.W.2d at 91. Newton conceded that the witness was the first adult to whom Doe made a statement concerning Newton's offenses. Although the witness's testimony concerning Doe's statement to her did not specify the manner or means of Newton's offenses, Doe's statement did clearly allege sexual abuse and clearly identified Newton as the abuser. The trial court did not abuse its discretion in finding that the witness's testimony was admissible under Article 38.072.[2] The trial court did not err in overruling Newton's hearsay objection.[3] We overrule Newton's first issue.

2.  We would, moreover, affirm on another ground. "[W]e will uphold a trial court's ruling on any theory of law applicable to the case ...." *State v. Ross*, 32 S.W.3d 853, 854 (Tex.Crim.App.2000); *accord Martin v. State*, 173 S.W.3d 463, 467 (Tex.Crim.App.2005); *Holden v. State*, 205 S.W.3d 587, 589 (Tex. App.—Waco 2006, no pet.); *see Hailey v. State*, 87 S.W.3d 118, 121–22 (Tex.Crim.App. 2002). The testimony would be admissible under the hearsay exception for statements for purposes of medical diagnosis or treatment. *See* TEX. R. EVID. 803(4); *Molina v. State*, 971 S.W.2d 676, 683–84 (Tex.App.— Houston [14th Dist.] 1998, pet. ref'd); *Gohr-*

*ing v. State*, 967 S.W.2d 459, 461–63 (Tex. App.—Beaumont 1998, no pet.); *Macias v. State*, 776 S.W.2d 255, 258–59 (Tex.App.— San Antonio 1989, pet. ref'd); *In re M.M.L.*, 2006 Tex.App. LEXIS 6783, at *9–*10, 241 S.W.3d 546, 557 (Tex.App.—Amarillo 2006, pet. filed) (juvenile adjudication); *Syndex Corp. v. Dean*, 820 S.W.2d 869, 873–74 (Tex. App.—Austin 1991, writ denied).

3.  Further, were we to hold that the trial court erred, we would, after examining the record as a whole, find that we have a fair assurance that the error did not influence the jury or had but a slight effect, and thus hold that the

EXTRANEOUS OFFENSES. In Newton's second and third issues, he contends that the trial court erred in overruling Newton's objections to evidence of extraneous offenses.

"A trial court's ruling on the admissibility of extraneous offenses is reviewed under an abuse of discretion standard." *Prible v. State,* 175 S.W.3d 724, 731 (Tex. Crim.App.), *cert. denied,* 546 U.S. 962, 126 S.Ct. 481, 163 L.Ed.2d 367 (2005); *accord Montgomery,* 810 S.W.2d at 391–93 (op. on reh'g).

Newton complains of testimony of his stepdaughter L. D.: "L.D. testified before the jury that Appellant sexually abused her when she was nine or ten when they lived in Houston. (4 RR at 99–100). Appellant made L.D. perform oral sex on him and then forced her to rub on his scrotum while he had sexual intercourse with an unknown individual. (4 RR at 100)." (Br. at 17.)

***Rule 404.*** In Newton's second issue, he argues under Texas Rule of Evidence 404(b). *See* TEX. R. EVID. 404(b). Under that rule, "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident ...." *Id.* "Rule 404(b) allows evidence of other crimes, wrongs, or acts if the evidence has relevance apart from character conformity." *Moses v. State,* 105 S.W.3d 622, 626

(Tex.Crim.App.2003); *accord Montgomery,* 810 S.W.2d at 387 (op. on reh'g); *see* TEX. R. EVID. 401–402; *Martin v. State,* 173 S.W.3d 463, 466 (Tex.Crim.App.2005). " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R. EVID. 401. To be probative, extraneous-offense evidence need only provide a " 'small nudge' towards contradicting [an] appellant's defensive theories and towards proving that ... molestation did occur." *Wheeler v. State,* 67 S.W.3d 879, 889 (Tex.Crim.App.2002) (internal footnote omitted) (quoting *Montgomery,* 810 S.W.2d at 381 (1990) (op. on orig. submission)).

"A trial court's Rule 404(b) ruling is reviewed under an abuse of discretion standard." *Page v. State,* 137 S.W.3d 75, 78 (Tex.Crim.App.2004) (citing *Lane v. State,* 933 S.W.2d 504, 519 (Tex.Crim.App. 1996)); *accord Montgomery,* 810 S.W.2d at 390–91 (op. on reh'g); *see Qualley v. State,* 206 S.W.3d 624, 638 (Tex.Crim.App.2006) (per curiam). "Whether extraneous offense evidence has relevance apart from character conformity, as required by Rule 404(b), is a question for the trial court" in its discretion. *Martin,* 173 S.W.3d at 466 (quoting *Moses,* 105 S.W.3d at 627); *accord Montgomery* at 391 (op. on reh'g).

*Defensive Issue.* First, Newton argues that the extraneous-offense evidence was not admissible to rebut a defensive issue, as the State argued at trial that it was.

error was harmless. *See* TEX. R. APP. P. 44.2(b); *Renteria v. State,* 206 S.W.3d 689, 706 n. 14 (Tex.Crim.App.2006); *McDonald v. State,* 179 S.W.3d 571, 578 (Tex.Crim.App. 2005); *Shuffield,* 189 S.W.3d at 791; *Haley v. State,* 173 S.W.3d 510, 518 (Tex.Crim.App. 2005); *Hanson,* 180 S.W.3d at 730. Doe,

eighteen years old at the time of trial, testified clearly to Newton's offenses. Newton concedes that Doe's testimony was "compelling" and his attempted impeachment of her "inefficacious," and that the evidence of his guilt was "powerful." (Br. at 40.)

"Rebuttal of a defensive theory ... is ... one of the permissible purposes for which relevant evidence may be admitted under Rule 404(b)." *Moses*, 105 S.W.3d at 626 (citing *Crank v. State*, 761 S.W.2d 328, 341 (Tex.Crim.App.1988), *disavowed on other grounds, Alford v. State*, 866 S.W.2d 619, 624 (Tex.Crim.App.1993)); *see Johnston v. State*, 145 S.W.3d 215, 222 (Tex. Crim.App.2004); *Albrecht v. State*, 486 S.W.2d 97, 101 (Tex.Crim.App.1972) (common law); *Wingfield v. State*, 197 S.W.3d 922, 925 (Tex.App.—Dallas 2006, no pet.); *e.g., Wheeler*, 67 S.W.3d at 886–87 (fabrication).

A defensive issue can be raised for purposes of Rule 404 otherwise than by evidence admitted by the defense. "[E]xtraneous offenses are admissible to rebut defensive theories raised by the testimony of a State's witness during cross-examination." *Ransom v. State*, 920 S.W.2d 288, 301 (Tex.Crim.App.1994); *accord Crank*, 761 S.W.2d at 341; *see Powell v. State*, 63 S.W.3d 435, 437–39 (Tex.Crim. App.2001); *Walker v. State*, 201 S.W.3d 841, 852 (Tex.App.—Waco 2006, pet. ref'd). "The mere fact that the state's witness was crossexamined will not, in and of itself, authorize the state to introduce evidence of extraneous offenses. Rather, it is the responses elicited from a state's witness on crossexamination which may allow the state to subsequently introduce extraneous offense evidence." *Crank* at 341 (citing *Albrecht*, 486 S.W.2d at 101–102); *accord DeLeon v. State*, 77 S.W.3d 300, 314 (Tex.App.—Austin 2001, pet. ref'd). The defense may also raise a defensive theory in its examination of the venire panel. *See Person v. State*, No. B14–91–00503–CR, 1993 Tex.App. LEXIS 1050, at *15, 1993 WL 102625, at *4 (Tex. App.—Houston [14th Dist.] Apr.8, 1993, no pet.) (not designated for publication).

The State argues that Newton raised the defensive issue that Doe fabricated her allegations, either out of her own ill will toward him or at her mother's prompting, in his examination of the venire panel, in cross-examination of the State's witnesses, and in argument.[4] The State points, and pointed in the trial court, to Newton's cross-examination of Doe.[5] Much of that concerns general impeachment of Doe by prior inconsistent statements; some of the cross-examination, however, does tend to raise the issue of fabrication. For example, Newton brought out that Doe hated and had no respect for Newton, disliked that he was "bossy," resented that he came between her and her mother, felt better when she moved away from him, and first alleged that he abused her after she learned that her mother might reconcile with him. (State Br. at 38 (citing 3 R.R. at 173).)

The State also points to Newton's voirdire examination, in which he asked:

> Do you think that someone is—when I say a 'child' in their teens—do you think someone in their teens is able to make up a story that's not true? Does everybody agree with that?
>
> Do you think that—we talked about— [the State] talked about the reason why people don't make outcries is because

---

4. Newton argues that the State "waived" its argument that the evidence of which he complains served to rebut the defensive theory that he "was the [v]ictim of a [f]rame-up." (Br. at 21; *see id.* at 21–22.) Newton does not argue that the State waived the State's fabrication argument. We do not perceive the two arguments to be distinct.

5. Newton argues that his cross-examination was "confined to issues brought up on direct examination ... by the State." (Br. at 24.) If that contention is correct, Newton cites no authority for the proposition that such crossexamination could not raise a defensive issue.

they're scared to say something about it. I forgot who said something, but they basically said that a child can be manipulated not to tell what has happened by an adult.

The adult has told them either by force or, you know, 'This will happen to you if you say this.' But do you think the converse of that, do you think that basically an adult can manipulate a child to say something? When I say 'child'— again, teenagers. Does everybody agree with that?

[sic] (2 R.R. at 103 (bracketed alteration added).) [6]

The trial court was in a position to observe Newton's voir-dire examination and cross-examination, and the responses of the panelists and witnesses, and the effect of those examinations and responses on the jurors. The trial court did not abuse its discretion in finding that Newton raised the issue of Doe's fabricating her testimony.

*Similarity.* Next, Newton argues that the extraneous offenses were not sufficiently similar to the offenses of which he was convicted.

"To be probative, the extraneous offense evidence admitted to rebut a defensive theory must be similar to the charged offense." *Blackwell v. State*, 193 S.W.3d 1, 13 (Tex.App.—Houston [1st Dist.] 2006, pet. ref'd); *see Wheeler*, 67 S.W.3d at 888.

Newton argues that "this Court should hold that the State must prove the extraneous offense is similar enough to the charged offense to 'earmark [it] as the handiwork of the accused' . . . ." (Br. at 30 (quoting *Owens v. State*, 827 S.W.2d 911, 914–15 (Tex.Crim.App.1992)) (bracketed

alteration by Newton).) *Owens* is distinguishable. *Owens* concerned evidence of "system," that is, " 'modus operandi' or 'methodology," ' or "a defendant's distinctive and idiosyncratic manner of committing criminal acts," to prove the defendant's identity. *Owens*, 827 S.W.2d at 915; *see id.* at 916. Under Rule 404(b), "[w]hen the State seeks to admit extraneous offense evidence under a theory of 'system' or modus operandi, 'there must be a showing that the extraneous offense which was committed by the defendant was "so nearly identical in method [to the charged offense] as to earmark them as the handiwork of the accused." " ' *Id.* at 915 (quoting *Collazo v. State*, 623 S.W.2d 647, 648 (Tex.Crim.App.1981) (quoting E. CLEARY, MCCORMICK'S HANDBOOK OF THE LAW OF EVIDENCE 449 (2d ed.1972))); *see Moore v. State*, 700 S.W.2d 193, 201 (Tex.Crim.App.1985); *Dickey v. State*, 646 S.W.2d 232, 235 (Tex.Crim.App. 1983). To prove system, "the prior bad act 'must be so distinctively similar' to the present offense 'as to constitute a "signature" act.' " *Qualley*, 206 S.W.3d at 638 (quoting *Johnston*, 145 S.W.3d at 221 n. 16 (internal footnote omitted)); *see Bishop v. State*, 869 S.W.2d 342, 346 (Tex.Crim.App. 1993).

But whether extraneous offenses are sufficiently similar to charged offenses to be admissible is a matter of degree. For example, "the degree of similarity required is not so great where intent is the material issue" that the extraneous offenses rebut "as when identity is the material issue, and extraneous offenses are offered to prove modus operandi." *Cantrell v. State*, 731 S.W.2d 84, 90 (Tex.Crim.App.1987); *cf. Owens*, 827 S.W.2d at 914–15. The degree

---

6. Newton advanced the issue more directly in his argument. There, Newton suggested that Doe fabricated the allegation against Newton in order to prevent her mother's reconcilia-

tion with Newton, or did so at the prompting of her mother, since Doe made her allegation immediately before her mother filed for divorce from Newton. (*See* 6 R.R. at 104–110.)

of similarity required to rebut a defensive issue, likewise, is not great. *See Blackwell*, 193 S.W.3d at 13; *Dennis v. State*, 178 S.W.3d 172, 178–79 (Tex.App.—Houston [1st Dist.] 2005, pet. ref'd). For example, in *Mendiola v. State*, the trial court admitted extraneous offenses in part to rebut Mendiola's defense that Mendiola was impotent and thus incapable of committing the charged offense. *Mendiola v. State*, 995 S.W.2d 175, 178–81 (Tex.App.—San Antonio 1999), *rev'd on other grounds*, 21 S.W.3d 282 (Tex.Crim.App.2000). There, in order to rebut that defense, the extraneous offenses need only tend to prove that Mendiola was not impotent. The probative value of the extraneous offenses did not flow from their close factual similarity to the charged offense, but only from their force to prove that the defendant was not impotent. Likewise, the probative value of Newton's extraneous offenses to rebut circumstantially Newton's fabrication issue does not flow from a close similarity to the charged offenses.

The State pointed primarily to the evidence that Newton sexually assaulted both stepdaughters when they were about the same age and that the abuse continued as long as Newton was in the home. If the jury believed that Newton committed those extraneous offenses, that would make it more probable that Doe was not fabricating her allegations against Newton. The trial court did not abuse its discretion in finding that the extraneous offenses were not so dissimilar from the charged offenses as to be without probative value.

*Remoteness.* Lastly, Newton argues that the extraneous offenses were "too remote to have any probative value." (Br. at 34.)

However, "Rule 404 imposes no time limitations . . . ." *Hernandez v. State*, 203 S.W.3d 477, 480 (Tex.App.—Waco 2006, no pet.). Rather, the Rules of Evidence "favor the admission of all logically relevant evidence for the jury's consideration." *Montgomery*, 810 S.W.2d at 376 (op. on orig. submission); *accord Hernandez* at 480; *Prince v. State*, 192 S.W.3d 49, 55 (Tex.App.—Houston [14th Dist.] 2006, pet. ref'd).

The cases cited by Newton are distinguishable. With the exception of one case, all of the cases cited by Newton were decided under the common law of evidence that existed prior to the adoption of the Rules of Evidence, which common law "tended to favor the exclusion of evidence." *Montgomery*, 810 S.W.2d at 375 (op. on orig. submission); *see Prince*, 192 S.W.3d at 55; *e.g. Messenger v. State*, 638 S.W.2d 883 (Tex.Crim.App. [Panel Op.] 1982). The other case, assuming that it was correctly decided, concerned extraneous-offense evidence admitted to prove system, which, for the reasons stated above, requires a high degree of similarity; and was decided under Rule of Evidence 403, not Rule 404. *See Reyes v. State*, 69 S.W.3d 725, 740 (Tex.App.—Corpus Christi 2002, pet. ref'd).

The trial court did not abuse its discretion in finding that the remoteness of the extraneous offenses did not render them without probative value.

The trial court did not abuse its discretion in overruling Newton's objection under Rule 404.[7] We overrule Newton's second issue.

---

7. Further, were we to hold that the trial court erred, we would hold, after examining the record as a whole, that we have a fair assurance that the error did not influence the jury or had but a slight effect, and thus that the error was harmless. *See* TEX. R. APP. P. 44.2(b); *Renteria*, 206 S.W.3d at 706 n. 14; *McDonald*, 179 S.W.3d at 578; *Shuffield*, 189 S.W.3d at 791; *Haley*, 173 S.W.3d at 518; *Johnston*, 145 S.W.3d at 224–25; *Hanson*,

**Rule 403.** In Newton's third issue, he argues under Rule of Evidence 403.[8] *See* TEX. R. EVID. 403. Under that rule, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." *Id.* We understand Newton to argue unfair prejudice. " '[U]nfair prejudice' refers to 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." ' *Erazo v. State,* 144 S.W.3d 487, 501–502 (Tex.Crim.App.2004) (quoting *Rogers v. State,* 991 S.W.2d 263, 266 (Tex. Crim.App.1999)); *accord Cohn v. State,* 849 S.W.2d 817, 820 (Tex.Crim.App.1993).

"[A] trial court is entitled to broad discretion in ruling on a Rule 403 objection." *State v. Mechler,* 153 S.W.3d 435, 439 (Tex. Crim.App.2005) (citing *Manning v. State,* 114 S.W.3d 922, 926 (Tex.Crim.App.2003)); *accord Powell v. State,* 189 S.W.3d 285, 288 (Tex.Crim.App.2006); *Martin,* 173 S.W.3d at 467; *Montgomery,* 810 S.W.2d at 391–93 (op. on reh'g). "... Rule 403's 'use' of the word 'may' reflects the draftsman's intent that the trial judge be given a very substantial discretion in 'balancing' probative value on the one hand and 'unfair prejudice' on the other, and that he should not be reversed simply because an appellate court believes that it would have decided the matter otherwise." *Powell,* 189 S.W.3d at 288 (quoting *Manning* at 926).

[A] Rule 403 analysis should include, but is not limited to, the following factors:

(1) how probative the evidence is;

(2) the potential of the evidence to impress the jury in some irrational, but nevertheless indelible way;

(3) the time the proponent needs to develop the evidence; and

(4) the proponent's need for the evidence.

*Shuffield,* 189 S.W.3d at 787 (quoting *Montgomery,* 810 S.W.2d at 389–90 (op. on reh'g)) (alteration. added); *see Powell,* 189 S.W.3d at 287.

As to the second factor, "[b]oth sexually related misconduct and misconduct involving children are inherently inflammatory." *Montgomery,* 810 S.W.2d at 397 (op. on reh'g); *accord Bishop,* 869 S.W.2d at 346; *Whitmire v. State,* 183 S.W.3d 522, 529 (Tex.App.—Houston [14th Dist.] 2006, no pet.); *Rickerson v. State,* 138 S.W.3d 528, 532 (Tex.App.—Houston [14th Dist.] 2004, pet ref'd). In evaluating the prejudicial effect of evidence, we take into account whether the trial court gave an instruction limiting the jury's consideration of the evidence to its proper purpose. *Blackwell,* 193 S.W.3d at 16–17; *Dennis,* 178 S.W.3d at 181. We also consider whether the parties argued that the jury could only consider the evidence for its proper purpose. *Blackwell* at 17.

As to the third factor, "[t]he potential for unfair prejudice occurs if the State spends an undue amount of time present-

180 S.W.3d at 730. Doe testified clearly to Newton's offenses. Newton concedes that Doe's testimony was "compelling" and his attempted impeachment of her "inefficacious," and that the evidence of his guilt was "powerful." (Br. at 40.)

8. We assume without deciding that Newton preserved his Rule 403 objection: "We're going to throw in more prejudicial than probative." (4 R.R. at 68); *see* TEX. R. APP. P. 33.1(a). Nonetheless, the trial court stated, "the 403, I'm considering that at the same time" as the Rule 404 objection. (4 R.R. at 90.)

ing the extraneous offense to the jury." *Dennis*, 178 S.W.3d at 181 n. 2.

As to the fourth factor, "[t]here are three questions that the reviewing court should answer ...: '[1] Does the proponent have other available evidence to establish the fact of consequence that the [evidence] is relevant to show? [2] If so, how strong is that other evidence? And [3] is the fact of consequence related to an issue that is in dispute?" ' *Erazo*, 144 S.W.3d at 496 (quoting *Montgomery*, 810 S.W.2d at 390 (op. on reh'g)) (bracketed numerals added); *accord Reese v. State*, 33 S.W.3d 238, 242 (Tex.Crim.App.2000).

As to the extraneous-offense evidence's probative value, for the reasons stated above, although the evidence did not tend to disprove fabrication directly, it tended circumstantially to prove that Doe did not fabricate her allegations. As to the evidence's prejudicial effect, the trial court carefully instructed the jury on the circumstances under which and the purpose for which the jury could consider the evidence, in limiting instructions both immediately after the witness testified, and in the trial court's charge. Moreover, both parties argued to the jury that it could not consider the evidence apart from those circumstances and for that purpose. As to the time that the State needed to develop the evidence, Newton argues that it was

extensive. Newton points to bench conferences on the admissibility of the evidence, to L.D.'s testimony generally, to the testimony of a witness apparently called to bolster L.D.'s credibility, to Newton's general cross-examination of L. D., and to Newton's direct examination of one of his witnesses. We do not attribute such matters to the State, as proponent of the evidence, in developing the extraneous-offense evidence. The State's presentation of the testimony of which Newton complains was brief. As to the State's need for the extraneous-offense evidence, Newton does not point to direct evidence tending to disprove Newton's fabrication issue, and the State points to the lack of evidence corroborating Doe's testimony.

On those factors, the trial court did not abuse its discretion in finding that the prejudicial effect of the extraneous-offense evidence did not substantially outweigh the evidence's probative value. The trial court did not err in overruling Newton's Rule 403 objection.[9] We overrule Newton's third issue.

**CONCLUSION.** Having overruled Newton's issues, we affirm.

---

9. Further, were we to hold that the trial court erred, we would hold, after examining the record as a whole, that we have a fair assurance that the error did not influence the jury or had but a slight effect, and thus that the error was harmless. *See* TEX. R. APP. P. 44.2(b); *Renteria*, 206 S.W.3d at 706 n. 14; *Shuffield*, 189 S.W.3d at 791; *McDonald*, 179 S.W.3d at 578; *Prible*, 175 S.W.3d at 737; *Haley*, 173 S.W.3d at 518; *Hayes v. State*, 85 S.W.3d 809, 816 (Tex.Crim.App.2002); *Hanson*, 180 S.W.3d at 730; *Williams v. State*, 27 S.W.3d 599, 603 (Tex.App.—Waco 2000, pet. ref'd); *see Horton v. State*, 986 S.W.2d 297, 303–304 (Tex.App.—Waco 1999, no pet.).

Doe testified clearly to Newton's offenses. Newton concedes that Doe's testimony was "compelling" and his attempted impeachment of her "inefficacious," and that the evidence of his guilt was "powerful." (Br. at 40.) The State argued that the jury could consider L. D.'s testimony for its bearing on Doe's credibility, but did not otherwise emphasize the testimony, and did not argue that the jury should find Newton guilty directly because of Newton's offenses against L.D. The trial court did not admit evidence of other extraneous offenses, and did give careful limiting instructions.